IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF one (1) Apple iPhone 14 Pro Max, with assigned call number (313) 978-2582 (**TARGET DEVICE 1**), and one (1) cellular device, unknown make or model, bearing telephone number (313) 948-2753 (**TARGET DEVICE 2**). | **UNDER SEAL** Case No: 4:23-SW- 168-JTK |

UNITED STATES' MOTION TO SEAL SEARCH WARRANT,
APPLICATION, AND SEARCH WARRANT AFFIDAVIT

The United States of America requests an order of the Court sealing this Motion, the Search Warrant, the Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, and the Order to Seal, in the above captioned and numbered matter. In making this request to seal the search warrant papers, the United States relies on the facts and statements set forth in, or on the face of, all of the search warrant papers and this motion, including the Affidavit for the Search Warrant. As set forth in the Affidavit, this matter concerns allegations of violations of Title 21, United States Code, Sections 841, 846, 843(b).

Moreover, the United States submits that the following statements of law are applicable to this request.

*1.    The search warrant in the case should be sealed.*

The search warrant identifies **the property to be searched** as it must, and, thus, provides an easy means by which to identify a potential subject of a criminal investigation. This revelation would adversely affect the privacy interests of the potential subjects. Moreover, the search warrants indirectly reveal information regarding the scope and focus of a grand jury investigation.

Page 1 of 7

*2.    The Application for the Search Warrant, and its supporting affidavit, should also be sealed for a number of reasons.*

A.  The government has a compelling interest in maintaining the integrity of an ongoing criminal investigation by denying public access to the details of the ongoing criminal investigation in this matter. The interest of the United States in this regard has been recognized by the United States Court of Appeals for the Eighth Circuit. Certain Interested Individuals v. Pulitzer Publishing Company, 895 F.2d 460 (8th Cir. 1990) (Gunn II); In re Search Warrant for Secretarial Area Outside Office of Gunn, 855 F.2d 569, 574 (8th Cir. 1988) (Gunn I). The current investigation is in a critical stage and disclosure of the search warrant application and affidavit would provide details of the nature, scope and direction of the government's criminal investigation in this matter. Revelation of this material would not only make it available to the general public but to the potential subjects of the investigation.

B.  The disclosure of the search warrant application and affidavit would expose the identities of persons who have provided information in connection with this investigation. The United States Supreme Court has recognized that the government has an important interest in maintaining the anonymity of persons providing information concerning criminal activity to law enforcement. McCray v. Illinois, 386 U.S. 300 (1967). Consequently, persons who act as mere tipsters and who provide information to support a finding of probable cause for the issuance of a search warrant or an arrest warrant do not have to be disclosed even within the context of a formal criminal trial. Id. Moreover, those individuals who provide information which is utilized in an affidavit in support of a search warrant have a legitimate and reasonable expectation that their confidentiality and privacy will be protected by the government. See, e.g., In re EyeCare Physicians of America, 100 F.3d 514, 519 (7th Cir. 1996); In re Search Warrant

Page 2 of 7

for 2934 Anderson Morris Road, 48 F. Supp. 2d 1082 (N.D. Ohio 1999); In re Search Warrants Issued on June 11, 1988, 710 F. Supp. 701, 704-05 (D.C. Minn. 1989).

C.     Disclosure of the contents of the search warrant affidavit will identify potential government witnesses.  The United States is not even required to disclose the identity of its witnesses within the context of a criminal trial except under very limited circumstances. The search warrant affidavit in this case specifically identifies persons who have provided information in connection with the investigation.  If the contents of the affidavit are disclosed, the identities of these potential witnesses will be revealed, again, not only to the public at large but to the potential subjects of the investigation.

D.     As stated above, this investigation is in the pre-indictment stages.  No indictments have been returned and no charges have been filed against any person by complaint or otherwise.

3.     The inventory return filed with the Court following the execution of the search warrant should also be sealed at this stage of the investigation to protect the affected party's privacy rights.  While the United States is obligated by Rule 41(f), F.R.C.P. to leave a copy of the warrant and the inventory at the location searched, doing so does not place those documents in the hands of third persons, only in the hands of the very person or persons who have a privacy interest entitled to Constitutional protection.

As to the privacy interests set forth above, the Eighth Circuit has recognized that the privacy interests of the parties affected by the search warrant must be considered.  The disclosure of the contents of the search warrant papers could damage the reputations and careers of people implicated in criminal conduct and could possibly even damage the character and reputations of

SW-423SW168-000003

innocent third parties prior to the institution of any formal charges. The courts have recognized that such a result should be avoided if possible. In re EyeCare Physicians of America, 100 F.3d 514, 519 (7th Cir. 1996); In re Up North Plastics, 940 F. Supp. 229, 232 (D.C. Minn. 1996); In re Search Warrants Issued on June 11, 1988, 710 F. Supp. 701, 704-705 (D.C. Minn. 1989); Gunn II, supra at 466-67. Under the circumstances, the Court must consider the procedural posture of the government's criminal investigation in any decision to disclose or seal the contents of the search warrant papers in this case. Gunn II directly addresses the competing Constitutional rights in the release of information regarding search warrants. The government and Pulitzer had agreed to release the information to the public. McDonnel Douglas and Gunn sought to have the information sealed because of their right of privacy. The Court stated,

> [w]here no indictments have issued against persons allegedly involved in criminal activity, there is a clear suggestion that, whatever their truth, the Government cannot prove these allegations. The court of public opinion is not the place to seek to prove them. If the Government has such proof, it should be submitted to a grand jury, an institution developed to protect all citizens from unfounded charges. All citizens, whatever their real or imagined past history, are entitled to the protection of a grand jury proceeding.

Id. at 466. The Court balanced the two constitutional rights in conflict, the qualified First Amendment right of access and the qualified Fourth Amendment right to privacy and declared neither of them absolute. The determining factor for the Court in weighing in favor of sealing the search materials was the fact that an indictment had not been obtained. The Court concluded: "In sum, we think the pre-indictment status of the government's criminal investigation tips the balance decisively in favor of the privacy interests and against disclosure of even redacted versions of the search warrant affidavits *at this time*." Id. at 467. (emphasis in original).

Page 4 of 7

SW-423SW168-000004

### *No Less Restrictive Means are Available*

General Order 22 requires that the Government address why less restrictive means to sealing all search warrant documents are not available.  Less restrictive means may include redaction of names and personally identifying information, line-by-line redaction of facts and events, or extraction of excerpts from search warrant documents.  Courts have ruled that these less restrictive means do not adequately protect the interests of the government or individuals in a number of instances.

First, the Eighth Circuit in Gunn I, explains that "line-by-line redaction is not practicable," noting that "[v]irtually every page contains multiple references to wiretapped telephone conversations or to individuals other than the subjects of the search warrants or reveals the nature, scope and direction of the government's ongoing investigation."  855 F.2d at 574.

Second, less restrictive means are not sufficient to protect privacy interests of individuals named in the search warrant documents.  Courts have held that redaction of individuals names does not "protect the identities of various individuals due to the context in which they are mentioned."  In re Search Warrant for 2934 Anderson Morris Road Niles, Ohio, 48 F. Supp. 1082, 1084 (N.D. Ohio 1999).  This protection of individuals identifiable through "context" is followed by the Eighth Circuit in Gunn II.  In Gunn II, the Eighth Circuit continued to maintain the seal of the documents in Gunn I, as the privacy interest of individuals named in "even the redacted versions of the search warrant affidavits" outweighed the public's First Amendment qualified right of access.  See Gunn II, 895 F.2d at 466.

Third, less restrictive means of extracting excerpts is not an effective alternative to sealing the entire document where it contains "detailed, specific information which, if disclosed,

SW-423SW168-000005

would compromise the ongoing government investigation." In the Matter of the Search of Office Suites for World and Islam Studies, 925 F. Supp. 738, 743-44 (M.D. Fla. 1996). In the Matter of the Search of Office Suites for World and Islam Studies, the district court found that the affidavits are "designed to support probable cause and each section builds on the next", and "[v]irtually every page of the affidavit contains references to conversations and events, and reveals the nature and scope of the on-going government investigation, including individuals not the subject of the search warrant." Id. at 744. Further the court found that extraction of excerpts was inadequate to protect the government's interests, as "even a portion of the affidavit would reveal, either explicitly or by inference, the scope and direction of the Government's investigation." Id.

WHEREFORE, for each of the above reasons, the United States respectfully requests that the Court enter an order which: (1) seals this motion pending further order of the Court; (2) seals the search warrant, the application for the search warrant, the affidavit in support of the application, the inventory return, and the order to seal until formal charges have been filed as a result of the investigation by criminal complaint or indictment, or until such time as a motion is made to the Court setting forth why the sealing of the search material is no longer justified by the foregoing reasons.

(END OF TEXT. SIGNATURE PAGE ATTACHED)

SW-423SW168-000006

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney

By:

KRISTIN H. BRYANT
AR Bar Number 2009156
Assistant United States Attorney
Post Office Box 1229
Little Rock, Arkansas 72203
Telephone: (501) 340-2600
Email: Kristin.Bryant@usdoj.gov

Page 7 of 7

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

IN THE MATTER OF THE SEARCH OF
one (1) Apple iPhone 14 Pro Max, with assigned call number
(313) 978-2582 (**TARGET DEVICE 1**), and one (1) cellular
device, unknown make or model, bearing telephone number
(313) 948-2753 (**TARGET DEVICE 2**).

**UNDER SEAL**

Case No: 4:23-SW-168-JTK

## ORDER TO SEAL SEARCH WARRANT PAPERS

The United States of America has filed a motion to seal the Search Warrant, the Application for Search Warrant, the Search Warrant Affidavit, the Inventory Return, its Motion to Seal, this Order, and all other pertinent search warrant papers in the above captioned and numbered matter. The Court finds that the above described papers should be and they are, hereby sealed until formal charges have been filed as a result of the investigation by criminal complaint or indictment, or until such time as a motion is made to the Court setting forth why the sealing of the search material is no longer justified. The Court finds, as established in the United States' Motion to Seal, that there exist compelling interests that outweigh the public's qualified First Amendment right of access and, FURTHER, that no less restrictive alternative to sealing is appropriate or practical.

Jerome T. Kearney
UNITED STATES MAGISTRATE JUDGE

Dated this 18 th day of September, 2023.

SW-423SW168-000008

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Arkansas

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

one (1) Apple iPhone 14 Pro Max, with assigned call
number (313) 978-2582 (TARGET DEVICE 1)

)
)
)
)
)
)

Case No. 4:23-SW-168-JTK

## APPLICATION FOR AN ANTICIPATORY SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Attachment A1

located in the _____Eastern_____ District of _____Arkansas_____, there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | Possession with intent to distribute a controlled substance and Conspiracy to possess with intent to distribute a controlled substance |
| Title 21, Section 843 | Use of a communication facility |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Issued by telephone pursuant to Rule 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure**

_____
*Applicant's signature*

Bruce J. Hernandez, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     09/18/2023

_____
*Judge's signature*

City and state:  Little Rock, Arkansas

Jerome T. Kearney, United States Magistrate Judge
*Printed name and title*

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

one (1) cellular device, unknown make or model, bearing
telephone number (313) 948-2753 (TARGET DEVICE 2).

) ) ) ) ) )

Case No. 4:23-SW-168- JTK

## APPLICATION FOR AN ANTICIPATORY SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Attachment A2

located in the _____ Eastern _____ District of _____ Arkansas _____ , there is now concealed *(identify the person or describe the property to be seized)*:
Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and 846 | Possession with intent to distribute a controlled substance and Conspiracy to possess with intent to distribute a controlled substance |
| Title 21, Section 843 | Use of a communication facility |

The application is based on these facts:
See Attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Issued by telephone pursuant to Rule 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure**

_____
*Applicant's signature*

Bruce J. Hernandez, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____ 09/18/2023 _____

_____
*Judge's signature*

City and state: Little Rock, Arkansas

Jerome T. Kearney, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

Affiant, Special Agent (SA) Bruce J. Hernandez, Drug Enforcement Administration (DEA), depose and state under penalty of perjury the following:

## AFFIDAVIT SUMMARY

1. This affidavit is submitted in support of an anticipatory search warrant related to two cellular devices (**TARGET DEVICES**) that agents believe will be possessed by Ernest Mordeau DEAS (DEAS) in the Eastern District of Arkansas. One of the devices is an Apple iPhone 14 Pro Max, with assigned call number (313) 978-2582 (**TARGET DEVICE 1**). The make and model of the second device is unknown however, the assigned call number is (313) 948-2753 (**TARGET DEVICE 2).** As described in detail below, there is probable cause to believe that DEAS uses **TARGET DEVICE 1** and has used **TARGET DEVICE 2** to facilitate the distribution of controlled substances, particularly cocaine, the use of a communication facility in facilitating the distribution of controlled substances, and a conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 841, 843(b), and 846 (Target Offenses).

2. Agents will execute this warrant only if the following conditions exist: (1) Ernest DEAS appears in the Eastern District of Arkansas, which can be corroborated by physical and/or electronic surveillance through active geo-location monitoring on **TARGET DEVICE 1**; (2) Ernest DEAS is in possession of a cellular device(s) while in the Eastern District of Arkansas; and (3) agents verify that call numbers (313) 978-2582 and/or (313) 948-2753 are assigned to the cellular device(s) in the possession of Ernest DEAS by calling these numbers while the devices are in the Eastern District of Arkansas, or if DEAS verbally tells agents the contact numbers or confirms he owns the devices. If all of these conditions exist, there is probable cause to believe that a subsequent search of the **TARGET DEVICES** will result in the recovery of evidence related to the Target Offenses.

1

SW-423SW168-000011

## INTRODUCTION AND BACKGROUND

3.      I am an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

4.      From 2011 to 2018, I was a police officer assigned to the narcotics section of the Largo (Florida) Police Department. From April 2014 to July 2018, I worked as a Task Force Officer for the DEA in Tampa Bay, Florida. I am now a Special Agent of the DEA, and am currently assigned to the Atlanta Field Division. I have been a Special Agent since October 2018. I received 16 weeks of training in drug investigations and related legal matters at the DEA Training Academy in Quantico, Virginia.

5.      Based upon my training, experience, and participation in other narcotics investigations, my accumulated knowledge from consultations with other law enforcement agents, and my debriefings of narcotics offenders, I know the following:

a.      Drug traffickers and those who launder the money generated by drug traffickers (money launderers) often cooperate and associate with a number of people involved in their illegal drug trafficking activity. As a result of the association and cooperation, the drug traffickers and money launderers often possess documents and other items that identify other members of a drug trafficking organization. Drug traffickers commonly maintain addresses or telephone numbers of their criminal associates in phones, address books, journals, computer files or other types of papers, even if said items may be in code. Drug dealers keep such information readily available so that they may transact narcotics business quickly and, also, so that they may be in constant contact should questions or difficulties arise in the course of their illegal endeavors. Additionally, I know that the nature of the drug business frequently necessitates that a drug trafficker's criminal

2

SW-423SW168-000012

associates change locations and contact phone numbers. Therefore, in order to keep up with those associates, it is necessary to keep accurate records of each individual's contact phones and addresses.

b.    With the advancement of technology, drug traffickers and money launderers commonly use multiple SIM cards, mobile or cellular telephones, smart phones (including Android and iOS-based devices), personal digital assistants, electronic address books and pagers, as well as regular telephones, to conduct their drug trafficking business. These items are often kept where traffickers have ready access to them, including on their person, in their vehicles, and in their residences. These devices commonly contain information related to the drug trafficking and money laundering activities, including telephone numbers of their criminal associates, voice and text or other electronic messages with their criminal associates, drug and money inventories and ledgers (including pay-owe ledgers), photographs, and other valuable information. I know that the forensic examination of cellular telephones will often recover deleted information including contact names and numbers as well as deleted text messages.

c.    Drug trafficking and money laundering on the scale revealed in this investigation are frequently a continuing activity that spans months or even years. Drug traffickers' inventory of controlled substances fluctuates depending on availability and demand. Drug traffickers commonly front drugs, or provide them on consignment to their customers. As a result, drug traffickers and money launderers must maintain books, receipts, notes, ledgers or some other type of record reflecting such transactions. Drug traffickers and money launderers usually keep their records in some secure yet readily accessible place where they can be used and maintained, such as in homes, storage buildings, automobiles, and safes. Drug traffickers and money launderers often keep these records of their illegal activities beyond the time during which controlled substances are actually

3

SW-423SW168-000013

in their possession, so that they can keep records of prior transactions for which they might be owed money for or owe money for.

d.    Drug traffickers and money launderers use cell phones, computers, and other electronic media devices to communicate with co-conspirators (including, but not limited to, suppliers, couriers, stash house workers, and customers) coordinate the purchase/sale/distribution of narcotics. I know from my training and experience that drug traffickers also use "smartphones" for these purposes, including various multimedia and communication platforms and applications. In particular, I know from my experience that drug traffickers often use messaging features on applications, including, but not limited to, Facebook Messenger, WhatsApp, Instagram, Telegram, WeChat, and various other chat features within other applications, and that these communications can be recovered from the device, like the **TARGET DEVICES**, including through forensic examination, which can often recover communications that the user has or has attempted to delete.

e.    Drug traffickers and money launderers will often subscribe to various communication services in alias names in an attempt to thwart law enforcement efforts to identify traffickers. Drug traffickers will often store their associates' contact information in phones and index such information to nicknames or other aliases instead of true name.

f.    Drug traffickers and money launderers often maintain some record of the movement of money, whether it is accomplished by wire or inter-bank transfer or by a person acting as a courier. Such records, even though they may be in code, are evidence of their illegal activities.

g.    Drug traffickers and money launderers often use false or fictitious names or corporations or other business entities to launder their drug proceeds and to send shipments of cash or controlled substances through the mail or other delivery services. Banks, both domestic and abroad, through which proceeds from their illegal activities are laundered, are often utilized by drug traffickers and money launderers or their agents. Funds are frequently transferred between

4

SW-423SW168-000014

banks and various accounts to conceal their sources and origins. It is also not uncommon for drug traffickers or money launderers to obtain negotiable instruments. Documents or records of any kind reflecting any connection with any such entity or transaction constitute potential evidence that can be used against the drug trafficker or money launderer.

h.      Drug traffickers and money launderers frequently utilize a continuing pattern of activities to launder and conceal drug-generated proceeds and assets that lasts over a period of months or even years. Drug traffickers and money launderers use these patterns or schemes to create the appearance of legitimate income so that they can eventually convert the proceeds or assets to themselves or to a nominee under their control. In this way, the drug traffickers and money launderers can enjoy and use their properties while attempting to conceal their illegal activities, which generated the proceeds or assets.

i.      Drug traffickers and money launderers regularly pose for photographs while in possession of firearms, cash, and narcotics for posting on social media sites or for personal display in their residences.

## IDENTIFICATION OF THE TARGET DEVICES

6.      The property to be searched are: (a) one (1) Apple iPhone 14 Pro Max, with assigned call number (313) 978-2582 (**TARGET DEVICE 1**), and (b) one (1) cellular device, unknown make or model, bearing telephone number (313) 948-2753 (**TARGET DEVICE 2**).

7.      This affidavit is submitted in support of a search warrant for the **TARGET DEVICES** for the things described in Attachment B. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5

SW-423SW168-000015

8.     The applied-for warrant would authorize the forensic examination of the **TARGET DEVICES** for the purpose of identifying electronically stored data particularly described in Attachment B.

## JURISDICTION

9.     This Court has jurisdiction to issue the requested warrant because the property to be searched for and seized will be in the Eastern District of Arkansas at execution.

## SOURCES OF INFORMATION

10.     I make this affidavit based upon personal knowledge derived from my training, experience, and participation in this investigation; information that I have learned from discussions with other investigators; the review of written reports of investigations, arrests, and seizures; the review of reports of physical surveillance conducted by state and local officers or other federal agents; the review of telephone toll records; information from court-authorized intercepts; and debriefings of sources of information and other witnesses.

11.     All statements set forth herein are stated in substance, unless otherwise indicated by quotation marks. This affidavit references intercepted communications that took place primarily in English. These interpretations and transcriptions/translations are drafts and subject to revision. Additionally, I know that participants in criminal conspiracies often speak in code, which is subject to interpretation. So, wherever in this affidavit I state a belief, that belief is my interpretation of what was said in the communication. This belief is based upon my training, experience, and knowledge of this investigation.

12.     Because this affidavit is being submitted for the limited purpose of seeking authorization to seize the **TARGET DEVICES**, I have not set forth each and every fact learned during the course of the investigation. Facts not set forth herein are not being relied upon in

6

SW-423SW168-000016

reaching my conclusion that an order should be issued, nor do I request that the Court rely upon any facts not set forth herein in reviewing this affidavit.

## **PROBABLE CAUSE**

13.     DEA Atlanta is currently investigating an Atlanta drug distribution ring centered around Charles DUNN. Agents have identified one of DUNN's associates, Adan MACEDO-RIOS, as a multi-kilogram cocaine and methamphetamine drug trafficker. Based on the investigation, agents have determined that MACEDO distributed cocaine and methamphetamine to other drug distributors, such as Charles DUNN, in Atlanta and other jurisdictions. Agents have intercepted wire and electronic communications over cellular devices used by MACEDO and DUNN, along with other conspirators, pursuant to federal orders authorizing such interception.[1]

14.     During the investigation, agents, working with local law enforcement, arrested several of DUNN's cocaine transporters. For example, Marquis Smith was arrested on February 25, 2023, on Interstate 20 East in Covington, Georgia, which is in the Northern District of Georgia,

---

[1]     There have been three periods of wiretap interception in this case. Agents first began intercepting communications over two phones used by MACEDO, assigned telephone numbers (470) 927-9767 (Target Telephone #1 or TT#1) and (678) 914-3630 (Target Telephone #2 or TT#2), and two phones used by DUNN, assigned telephone numbers (404) 452-2448 (Telephone #3 or TT#3) and (470) 526-4638, (Target Telephone #4 or TT#4), pursuant to a February 17, 2023 order from the Honorable Eleanor L. Ross, United States District Judge for the Northern District of Georgia (1:23-mj-170).

During the second interception period, pursuant to an April 6, 2023 order from the Honorable J.P. Boulee, United States District Judge for the Northern District of Georgia (1:23-mj-333), agents intercepted wire and electronic communications over DUNN's **TT#3** and another phone used by MACEDO: (463) 248-7054 (Target Telephone #5 (TT#5)), and intercepted wire communications over a phone used by Ignacio GUDINO: (818) 233-1099 (Target Telephone #6 (TT#6)).

Agents were intercepting wire and electronic communications over DUNN's **TT#3** and **TT#4**, pursuant to a June 16, 2023 order from the Honorable Steven D. Grimberg, United States District Judge for the Northern District of Georgia (1:23-mj-570). During that period of interception, on July 11, 2023, DUNN, MACEDO, and multiple other members of the DUNN DTMLO were arrested for federal drug crimes.

SW-423SW168-000017

with four kilograms of cocaine and a loaded handgun in his vehicle. Smith was conducting a drug transaction for DUNN and MACEDO.

15.    Second, on March 5, 2023, DUNN and MACEDO coordinated a four-kilogram cocaine transaction, where Darrius ELLIOTT would retrieve four kilograms of cocaine from an unknown individual (UM197) in Lawrenceville, Georgia. ELLIOTT was also arrested in the Northern District of Georgia.

16.    During the second interception period in April 2023, through intercepted communications over **TT#3**, physical and electronic surveillance, agents determined that DUNN sent Afiba SMALL-John – a drug transporter - to Newark, New Jersey to obtain 13 to 15 kilograms of cocaine from Khanesavanh NHALAY a/k/a Somsanouk BOUPHAVONG. SMALL was traffic stopped on April 11, 2023 and law enforcement seized 9 kilograms of cocaine and $55,545.00 in cash from his vehicle. Although DUNN was aware of the traffic stop and seizure (as demonstrated by subsequent intercepted communications), he did not cease distributing drugs. Agents believe the cocaine and the money was destined for DUNN.

17.    Additionally, during the same period of interception, BOUPHAVONG and DUNN negotiated a 30 plus kilogram cocaine transaction. Through intercepted calls over **TT#3**, agents learned that DUNN sent Stephen ALLEN – a drug and money transporter - to Columbus, Ohio to meet BOUPHAVONG. Through intercepted calls among DUNN and members of the DTMLO, agents learned that BOUPHAVONG planned to transport cocaine to ALLEN on May 6, 2023, and ALLEN, in turn, would then transport the narcotics to DUNN in Atlanta, Georgia. Through intelligence gathering, a DEA administrative subpoena, intercepted communications over **TT#3**, and physical surveillance by DEA-Newark, agents verified BOUPHAVONG was a guest at Newark-Hilton Hotel on May 5, 2023. On that date, DEA agents encountered BOUPHAVONG in the hotel parking lot and later recovered approximately 29 kilograms of cocaine and $84,893 in

8

SW-423SW168-000018

bulk cash from BOUPHAVONG's hotel room.

18.    During the last interception period over **TT#3** and **TT#4**, coupled with physical and remote video surveillance, DEA-Atlanta coordinated the arrests of Stephen ALLEN, Dwight DICKERSON, and Tyshaun MOBLEY on June 25, 2023, June 28, 2023, and July 07, 2023 respectively.

19.    Through the wiretap investigation, agents have learned DUNN obtains multiple kilograms of cocaine at a time from MACEDO, Ernest DEAS, and others, and he then supplies various co-conspirators quantities of narcotics – in Georgia, South Carolina, North Carolina, Florida, Alabama, Tennessee, New York, and Ohio. While using multiple phones, Facetime, and encrypted applications, such as WhatsApp, DUNN directed and coordinated multiple individuals, including transporters, stash house coordinators, and drug distributors and sources, who assisted DUNN in the overall drug network. Further as noted above, DUNN had multiple domestic cocaine sources, as well as at least one foreign source of supply, **Redacted**

**Redacted**

20.    Prior to DUNN being arrested on July 11, 2023, intercepted communications over both TT#3 and TT#4 suggested DUNN was attempting to procure 200 kilograms of cocaine from the Bahamas, which was destined for the Northern District of Georgia. In fact, throughout the interception periods agents intercepted DEAS over TT#4 over two devices: ((313) 978-2582 (**TARGET DEVICE 1**) and an alternative device assigned (313)-948-2753 (**TARGET DEVICE 2**), which per T-Mobile was recently disconnected on or about August 21, 2023 and was the same phone where DUNN and DEAS were discussing the details of the order.

9

SW-423SW168-000019

21.    **Redacted**

**Redacted** positively identified DEAS as a cocaine supplier. Specifically, DUNN sent SMALL-John to Ft. Lauderdale, Florida in February 2023 to meet DEAS in order to replenish DUNN's cocaine supply. **Redacted** **Redacted** toll records corroborate this information, and agents intercepted DEAS (using **TARGET DEVICE 2),** DUNN, and SMALL-John coordinating the event, coupled with hotel, flight, and Greyhound bus records that agents recently acquired placing DEAS in the Miami, Florida area during the transaction.

22.    Following the dismantlement of the DUNN network, agents have continued the investigation on DEAS. **TARGET DEVICE 1** is a device that is actively being used by DEAS, has an active WhatsApp profile assigned, which allows DEAS to communicate with GARDINER and others. Agents believe DEAS is utilizing the **TARGET DEVICE 1** to coordinate the importation of cocaine into the United States, to include the Northern District of Georgia. Notably, per court authorization, agents are actively monitoring the geo-location data from **TARGET DEVICE 1** and have been monitoring DEAS's travels since approximately August 30, 2023.

23.    Also, through information provided by the Department of Homeland Security, agents located a travel itinerary for DEAS, which lists **TARGET DEVICE 1** as a phone number associated to DEAS on pertinent records. DEAS is a frequent traveler to Nassau, Bahamas and traveled to the Bahamas in March 2023. Last, agents have learned DEAS was convicted for a federal drug (cocaine) crime by DEA-South Carolina in 2005 and was sentenced to 20 years for drug trafficking but released early in 2018.

**June 26, 2023 – DUNN and DEAS Discuss Potential Acquisition of 200 Kilograms of Cocaine**

24.    The following information was obtained through the court-authorized wiretap on DUNN's TT#4. On June 26, 2023, at approximately 9:42 p.m., DUNN, using TT#4, made an

10

outgoing call to Ernest DEAS, using his alternate phone number **(TARGET DEVICE 2)**. In pertinent part:

| | |
|---|---|
| **DUNN:** | "I want to run this to you too. [Inhales] I'ma see what you think about this. So, my friend, S… Uh, who really wants to do, this is what he want to do. I, I look for a reason to see you anyways to spend time with you. He wants to fly you down here, and, uh, he wants to have a meeting with you. Uh, you met S! Did you? The Asian dude? While you were staying here? Did he come over here?" |
| **DEAS:** | "I don't know if I met him or not. I don't, I don't, I'm not sure. I don't think so." |
| **DUNN:** | "Okay." |
| **DEAS:** | "I saw the guys with the, the, with the, uh, light stuff, the whole light stuff." |
| **DUNN:** | "Oh, okay. So anyways, let me tell you what I need you to do for me, and if you don't want to I understand. So, you don't have to do nothing with him. I just want you to entertain the conversation with him. This is why. Dude tried to help me and Bill. Same one who you got the one from. He sent twelve or thirteen and they got hit. Uh, so, he like, 'Man,' Me was the dude I was going to send the extra 200 to [unintelligible], heavy hitter. The same dude I told you about he had a [unintelligible]. So, he called me, he said 'Man why don't you please call Shorty, man, so we can have a meeting.' This is what I told him, first off, I said, 'Bro, having a meeting… I don't know how that is going to make you know, everything, uh, I mean that's not going to expedite the process. Shorty is doing everything he can.' And he was like, 'I want to see when we can do.' This is what he is talking about doing, This is what he is talking about doing. He talking about paying- this, this what I'm getting. He talking about paying you some money, not to go to work, not to do nothing. Flying you to down there, and you just stay down there, and him paying you to stay down there until we get some work. So, I said, 'Man you don't need to do that, you can fly to Detroit if you want to talk to him about that.' So, I said but, I'ma tell you everything I told him. 'First of all, his partner is not gonna want to meet you, and…' Even thought |

11

S is solid now, S is solid. "

**DEAS:**       "Uh-huh."

**DUNN:**       "Uh, uh, and I said Shorty is not gonna be able to bridge that gap. The only thing about it is, uh, Shorty can eventually tell him when he do get to that extra 200. Uh, that, uh, this is you know Silk's partner right across the water at Miami 'cause I'm sure he'll be happy about something right next door."

a.       Based on the investigation to date, and my knowledge, training, and experience, I believe DUNN contacted DEAS to coordinate a meeting with DEAS and an associate of DUNN's named "S," (Somsanouk BOUPHAVONG), in Atlanta, Georgia ("So, my friend, S... Uh, who really wants to do, this is what he want to do. I, I look for a reason to see you anyways to spend time with you. He wants to fly you down here, and, uh, he wants to have a meeting with you."). DUNN asked if DEAS met "S" in the past, when he was in Atlanta, Georgia ("Uh, you met S! Did you? The Asian dude? While you were staying here?"). DUNN said that he wanted DEAS to consider a sit down with "S" ("I just want you to entertain the conversation with him."). DUNN vouched for "S" by saying that "S" previously provided DEAS one unit of cocaine and also tried to help DUNN and his associate "Bill" with 12-13 units of cocaine, but law enforcement seized the product ("Dude tried to help me and Bill. Same one who you got the one from. He sent twelve or thirteen and they got hit.") DUNN explained that he told "S" that DEAS ("Shorty") was doing what he could, but the meeting may or may not expedite the process to replenish their cocaine supply ("This is what I told him, first off, I said, 'Bro, having a meeting... I don't know how that is going to make you know, everything, uh, I mean that's not going to expedite the process. Shorty is doing everything he can.'"). DUNN said that "S" was willing to fund DEAS's travel to the

12   .

SW-423SW168-000022

Bahamas to coordinate another drug load[2] ("He talking about paying you some money, not to go to work, not to do nothing. Flying you to down there, and you just stay down there, and him paying you to stay down there until we get some work."). DUNN said that he explained to "S" that all DEAS could do was confirm when 200 kilograms was available ("The only thing about it is, uh, Shorty can eventually tell him when he do get to that extra two-hundred."), which may be more favorable to the foreign cocaine source because the Bahamas was closer to Miami, Florida, rather than Atlanta, Georgia ("Uh, that, uh, this is you know Silk's partner right across the water at Miami 'cause I'm sure he'll be happy about something right next door."

25.    On June 26, 2023, at approximately 11:37 p.m., DUNN, using TT#4, made an outgoing call to Ernest DEAS, using his alternate phone (the 2753 number). In pertinent part:

| | |
|---|---|
| **DUNN:** | "Hey buddy, hey I just found, my, uh, nephew said that he could Zelle something for me. So, uh…" |
| **DEAS:** | "Okay." |
| **DUNN:** | "So he- Just Zelle it to this number?" |
| **DEAS:** | "Uh, you know what Zelle it to the other number. The three, one, three, nine, seven, eight, two, five, eight, two." |
| **DUNN:** | "Can you text it to me?" |
| **DEAS:** | "I'ma give you my phone number. Ready?" |
| **DUNN:** | "He is playing! Yep, yep, I'm ready." |
| **DEAS:** | "Three, one, three, nine, seven, eight, two, five, eight, two. That's Ernest." |

---

[2]    Based upon HSI and Delta flight itinerary, agents are aware that DEAS traveled to Nassau, Bahamas February 15-17, 2023, and returned to Miami, Florida. Through intercepted communication over Target Telephone #4, from February 19-23, 2023, agents determined that DEAS coordinated a 9-kilogram cocaine deal with DUNN, which allowed DUNN to distribute cocaine in the Northern District of Georgia. Therefore, agents believe that DEAS travels to the Bahamas in order to facilitate narcotics transactions.

SW-423SW168-000023

a.    Based on the investigation to date, I know that traffickers often times use multiple cellular phones to conduct their drug transactions to thwart law enforcement. Also, traffickers attempt to insulate personal matters and the hierarchy amongst the organization by using multiple devices. During this call, agents intercepted DUNN and DEAS over TT#4, with DEAS requesting money via Zelle. However, DEAS asked DUNN to send the money to the **TARGET DEVICE 1** to complete the monetary transaction.  DUNN told DEAS that he found an associate that could assist in the matter ("Hey buddy, hey I just found, my, uh, nephew said that he could Zelle something for me. So, uh…"). DEAS acknowledged ("Okay"). DUNN asked if he should instruct his associate to Zelle the money to the 2753 number ("So he- Just Zelle it to this number?"), but DEAS requested the transaction occur over the **TARGET DEVICE 1** instead ("Uh, you know what Zelle it to the other number."). DEAS recited the **TARGET DEVICE 1** contact number (313) 978-2582 ("three, one, three, nine, seven, eight, two, five, eight, two."). DUNN asked DEAS to send him a text message containing the phone number ("Can you text it to me?"), but DEAS said he would recite the phone number again ("I'ma give you my phone number. Ready?"). DEAS then relayed the contact number for the **TARGET DEVICE 1** for a second time and indicated his name "Ernest" ("Three, one, three, nine, seven, eight, two, five, eight, two. That's Ernest."). Based on the investigation to date, I know that DUNN's primary source of income was the distribution of drugs, particularly cocaine, methamphetamine, and marijuana. Further, I also know that DUNN typically used third parties to send money to drug associates to insulate himself. Here, DUNN said that he would have another individual, "his nephew," send money, which I believe to be drug proceeds, to DEAS, as opposed to DUNN sending the money himself.

### TOLL ANALYSIS FOR TARGET DEVICE 1

26.    Based on recent toll records for  **TARGET DEVICE 1** (both traditional and WhatsApp contacts associated with the **TARGET DEVICE 1**), DEAS is actively using the

14

**TARGET DEVICE 1** to communicate with suspected drug traffickers, including individuals in the Bahamas.

27.      Specifically, agents observed tolls that showed that DEAS used **TARGET DEVICE 1** to communicate with William Lowery a/k/a "Bill" over contact number (404) 927-9649 on 26 occasions from August 2, 2023 through August 30, 2023. During the wiretap investigation, Lowery, using this same 9649 phone number, was intercepted over TT#4 on several occasions in communications about multi-kilogram drug transactions. Based on the intercepted communications and Lowery's criminal history, agents believe Lowery is a poly-drug trafficker who was supplied cocaine and methamphetamine by DUNN, was charged with cocaine trafficking with DEAS in the 2005 DEA South Carolina investigation, and, based on flight records, traveled to the Bahamas with DEAS in March 2023.

28.      Additionally, from August 2, 2023, through September 4, 2023, DEAS has used the **TARGET DEVICE 1** to communicate with multiple telephones with the Bahamas area code, Redacted on 114 occasions ((242) 455-6984). Based on the prior intercepts and the timing of DEAS's trip to the Bahamas before his cocaine transaction with SMALL, agents believe that at least some of the individuals with Bahamas-based phone numbers are involved in drug trafficking.

29.      Based upon these toll records, agents believe DEAS is still using the **TARGET DEVICE 1** to engage in narcotics trafficking.

### SUBPOENA RETURNS FROM APPLE and JP MORGAN CHASE

30.      On or about September 06, 2023, I received information from Apple, with subscriber information for the iCloud account associated with **TARGET DEVICE 1.** Apple provided the Apple ID as Mordeau60@iCloud.com (**TARGET DEVICE 1**) and the name of the account holder as Ernest DEAS, with a physical address of 25043 Pierce St., Southfield, Michigan.

15

Notably, DEAS uses this address for hotel, flight, and his financial records. Additionally, according to bank records from Chase, DEAS has an account associated to Chase Freedom, account ending in #5098. The records show recent transactions in Southfield, Michigan from July 2023 and identify that DEAS listed his home address as 25043 Pierce St., Southfield, Michigan, and **TARGET DEVICE 1** as DEAS home contact number.

## AUTHORIZATION OF GEO-LOCATION WARRANT FOR TARGET DEVICE 1

31.     On August 30, 2023, Justin S. Anand, United States Magistrate Court Judge for the Northern District of Georgia, authorized agents to monitor the geolocation data for **TARGET DEVICE 1** (1:23-mc-1488). Since that time, agents have identified that DEAS - a known trucker - who is employed by Monarch Transport LLC., has traveled through Arkansas, Texas, Tennessee, Illinois, and Michigan.  On September 13, 2023, agents identified that **TARGET DEVICE 1** was in the area of TravelCenters of America, located at 5490 North Highway 146, Baytown, Texas 77523. Agents sought the assistance of Baytown Police Department. On that date, DEA agents provided an officer with a photograph for identification purposes. The Baytown PD officer traveled to TravelCenters of America and located a 2007 Freightliner, bearing a State of Michigan tag RC24243, registered to AMN Service LLC., which is based out of Grandville, Michigan. Additionally, the officer obtained a Michigan trailer license plate identified as E318278 also registered out of Grandville, Michigan. Prior to the truck vacating the parking lot, the officer positively identified DEAS operating the truck and indicated DEAS was the lone occupant.

32.     Notably, on August 30, September 6, September 10, and most recently on September 14, 2023, the geo-location data of **TARGET DEVICE 1** was situated in the various areas of the State of Arkansas. Agents observed DEAS chose to travel along Interstate 30 and Interstate 40 East and Westbound when he was traveling to/from Texas. Agents monitored the geo-location data of **TARGET DEVICE 1** and confirmed DEAS arrived in the area of Grandville,

16

Michigan on September 15, 2023. On September 18, 2023, the geo-location data of **TARGET DEVICE 1** appeared to be traveling South on the interstate in the Western District of Michigan towards Indiana. Based on this consistent route, agents believe DEAS and the **TARGET DEVICES** can be intercepted in the Eastern District of Arkansas with certainty, most likely in between the dates of September 18-22, 2023.

33.    In the event DEAS arrives in the Eastern District of Arkansas as expected, is in possession of at least one cellular device, agents plan to verify that either call number for the **TARGET DEVICES** are in the possession of DEAS by calling these numbers while the devices are in the Eastern District of Arkansas, this warrant will be executed. Insofar as agents are only able verify one of the devices, the warrant will be executed for only that device. Otherwise, this warrant will not be executed.

34.    Based on my training and experience, I know that traffickers and money launderers frequently keep logs or records to track the transactional activity related to their operations and these logs or records can be accessed and stored on electronic devices. Similarly, information such as photographs, videos transactional records, contact information, and voice recordings are often stored on cellular devices.

35.    Based on my training and experience, and the experience of other law enforcement agents, I know that individuals who engage in crimes and who conspire with others to commit crimes, including money laundering, often possess additional evidence of their criminal activities in property under their dominion or control, including electronic devices and cellular telephones like the **TARGET DEVICES**.

36.    In particular, based on my training and experience, I know it is common for individuals who commit crimes to use cell phones to facilitate or further their criminal activities, or maintain evidence of their criminal activities stored on their cell phones. Based on my training

17

SW-423SW168-000027

and experience, I know that most individuals in carry their cell phones on their person day and night,[3] and cell phones, like the **TARGET DEVICES** play an integral role in the daily lives of individuals, including individuals engaging in many types of crimes. For instance, these individuals may possess electronic records or documents on their cell phones or other electronic devices—including photographs/videos of financial transaction, communications, contact information of criminal associates, and financial transaction records—that provide evidence of the individual's criminal intent, reflect ownership or possession of contraband, and/or identify co-conspirators or other individuals who may have been involved in the criminal activity under investigation.

37.    Based on my training, experience, and research, I know that an iPhone or smartphone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, the precise location of the device and communications with co-conspirators.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

38.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

---

[3]    In *Riley v. California*, 573 U.S. 373 (2014), the Supreme Court cited one poll which found that "nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower." *Id.* at 395.

SW-423SW168-000028

39.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.      Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file

b.      Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19

SW-423SW168-000029

40.    *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICES** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

41.    *Manner of execution.*    Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.    Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

42.    Based on the above, there is probable cause to believe that Ernest DEAS is currently engaged in the commission of federal criminal violation, including distribution of controlled substances 21 U.S.C. 841. In addition, there is probable to believe that evidence of drug trafficking, as further described in Attachment B, will be found on the **TARGET DEVICES**, as further described in Attachment A.

---

Bruce J. Hernandez, Special Agent
Drug Enforcement Administration

Sworn to in my presence and/or by reliable electronic means

---

Hon. Jerome T. Kearney
United States Magistrate Judge
Eastern District of Arkansas

20

SW-423SW168-000030

## Attachment A1
## Property to be Searched

      a.     One (1) Apple iPhone 14 Pro Max, bearing cellular telephone number (313) 978-2582 (**Target Device 1**).

SW-423SW168-000031

## Attachment A2
## Property to be Searched

a.    One (1) cellular device, unknown make and model bearing cellular telephone

number (313) 948-2753 (**Target Device 2**).

SW-423SW168-000032

## Attachment B
## Items to be Seized

All records and information contained on the **TARGET DEVICES**, described in Attachment A, from January 2023 through the present date, that relate to violations of 21 U.S.C §§ 841, 843(b), and 846 that involve Ernest DEAS and others, including but not limited to:

a. contact list, which provides the names and/or nicknames and phone numbers, including cellular, home and work numbers of persons in contact with the users of the **TARGET DEVICES**;

b. text, e-mail, voicemail, social media content (e.g., Facebook, Instagram, Twitter, Snapchat or any other communication application) and messages, web browser history;

c. pictures and videos which includes any saved pictures or videos taken, sent or received;

d. notepad or other files that allows the user to input and store miscellaneous information into the phone;

e. calendar, which allows the user to store dates and/or times of appointments and events;

f. call history, which includes missed, received, dialed calls, and includes the time and contact information;

g. lists of customers and related identifying information;

h. amounts, dates and locations of money laundering contracts, cryptocurrency wallets, tokens;

i. addresses, phone numbers, or any other identifying information);

j. any information recording users of the **TARGET DEVICES** schedule or travel;

23

SW-423SW168-000033

k.  all bank records, checks, credit card bills, account information, and other financial records or applications.

l.  Any geographic location that may be stored on any of the **TARGET DEVICES**.

2.  Evidence of user attribution showing who used or owned the **TARGET DEVICES** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used herein, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

24

SW-423SW168-000034

AO 93B  (Rev. 11/13) Anticipatory Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Arkansas

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>one (1) Apple iPhone 14 Pro Max, with assigned call<br>number (313) 978-2582 (TARGET DEVICE 1), | )<br>)<br>)  Case No.   4:23-SW-168-JTK<br>)<br>)<br>) |

## ANTICIPATORY SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Arkansas_____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A1

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property UPON OCCURRENCE OF THE FOLLOWING CONDITION(S) *(state the condition(s) which must occur to establish probable cause)*:
Target Device 1 is confirmed to be in the Eastern District of Arkansas

I further find that upon the occurrence of the conditions specified above, such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____October 2, 2023_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

IF THE CONDITION(S) DESCRIBED ABOVE HAVE NOT OCCURRED, THIS WARRANT MUST NOT BE EXECUTED.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Jereome T. Kearney_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b),  I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  9/18/23 @ 2:20 PM

City and state:  Little Rock, Arkansas

_____Jerome T. Kearney, United States Magistrate Judge_____
*Printed name and title*

SW-423SW168-000035

AO 93B  (Rev. 11/13) Anticipatory Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>4:23-SW-168-JTK | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

　　　I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Executing officer's signature*

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　*Printed name and title*

SW-423SW168-000036

AO 93B  (Rev. 11/13) Anticipatory Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of Arkansas

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )  Case No.   4:23-SW-168-JTK |
| one (1) cellular device, unknown make or model, | ) |
| bearing telephone number (313) 948-2753 (TARGET | ) |
| DEVICE 2) | ) |

## ANTICIPATORY SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____Arkansas_____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A2

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property UPON OCCURRENCE OF THE FOLLOWING CONDITION(S) *(state the condition(s) which must occur to establish probable cause)*:

Target Device 2 is confirmed to be in the Eastern District of Arkansas

I further find that upon the occurrence of the conditions specified above, such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____October 2, 2023_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.      ☐ at any time in the day or night because good cause has been established.

IF THE CONDITION(S) DESCRIBED ABOVE HAVE NOT OCCURRED, THIS WARRANT MUST NOT BE EXECUTED.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Jereome T. Kearney_____ .
                                                                                                                        *(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b),  I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    9/18/23 @ 2:20 pm  _____
                                                                                      *Judge's signature*

City and state:   Little Rock, Arkansas _____    Jerome T. Kearney, United States Magistrate Judge
                                                                                                          *Printed name and title*

SW-423SW168-000037

AO 93B  (Rev. 11/13) Anticipatory Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br>4:23-SW-168- JTK | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

  I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____          _____
                                                    *Executing officer's signature*

                                                    _____
                                                    *Printed name and title*

SW-423SW168-000038