FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: **Feb 14 2024**

**KEVIN P. WEIMER , Clerk**

By: s/B. Evans
**Deputy Clerk**

(USAO GAN 6/10)  Search Warrant

# United States District Court
## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Two Cellular Telephones seized on January 24, 2024 from
Ernest M. Deas

**APPLICATION AND
AFFIDAVIT FOR
SEARCH WARRANT**
Case number: 1:24-MC-240
**UNDER SEAL**

I, Bruce J. Hernandez, depose and say under penalty of perjury:

I am a Special Agent of the Drug Enforcement Administration and have reason to believe that in the property described as:

**Two Cellular Telephones seized on January 24, 2024 from Ernest M. Deas, as more fully described in Attachment A,**

in the Northern District of Georgia there is now concealed certain property, certain information, and certain data, namely,

**See Attachment B,**

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21, United States Code, Section(s) 841(a)(1), 843, 846. The facts to support a finding of Probable Cause are as follows:

**SEE ATTACHED AFFIDAVIT**

Continued on attached sheet made a part hereof.

Sworn to me by telephone pursuant to Federal
Rule of Criminal Procedure 4.1.

Signature of Affiant
Bruce J. Hernandez

February 14, 2024
Date

Atlanta, Georgia
City and State

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Rebeca M. Ojeda

Signature of Judicial Officer

SWRET-124MC240-000001

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT**

I, Bruce Hernandez, Special Agent with the Drug Enforcement Administration (DEA), depose and say under penalty of perjury:

**<u>Introduction and SUBJECT TELEPHONES</u>**

1.     I submit this affidavit in support of an application for a search warrant for two cellular telephones:

> **SUBJECT TELEPHONE 1**: a black Samsung Smartphone, Model no. SM-A146U, IMEI: 352096691489076, phone number (734) 217-6607, sealed inside DEA SSEE Bag S001154427, which was seized from Ernest DEAS incident to his arrest on January 24, 2024; and

> **SUBJECT TELEPHONE 2**: a black TCL Smartphone, sealed inside DEA SSEE Bag S001154428, which was seized from Ernest DEAS incident to his arrest on January 24, 2024,

(collectively, "**SUBJECT TELEPHONES**"), described in further detail in Attachment A. The **SUBJECT TELEPHONES** were seized following the arrest of Ernest DEAS on January 24, 2024, in Auburn, Alabama. The **SUBJECT TELEPHONES** are currently stored in a temporary storage locker vault housed inside the DEA Atlanta Field Division Office Strike Force Building, located at 2635 Century Parkway NE, Atlanta, Georgia 30345. The DEA-Atlanta Strike Force Building is situated within the Northern District of Georgia.

1

2.      As set forth below, I respectfully submit that there is probable cause to believe that there is presently concealed within the **SUBJECT TELEPHONES** (see above and **Attachment A**) the items described in **Attachment B**, which constitute: evidence of a crime and property designed for use, intended for use, or used to commit a crime, concerning violations of Title 21, United States Code, Sections 841(a), 843, and 846. I seek authorization for a forensic examination/search of the **SUBJECT TELEPHONES** to identify the electronically stored data particularly described in **Attachment B**. **Attachment A** and **Attachment B** are incorporated herein by reference.

## Agent Background

3.      I am an "investigative or law enforcement officer" of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

4.      From 2011 to 2018, I was a police officer assigned to the narcotics section of the Largo (Florida) Police Department. From April 2014 to July 2018, I worked as a Task Force Officer for the DEA in Tampa Bay, Florida. I am now a Special Agent of the DEA, and am currently assigned to the Atlanta Field Division. I have been a Special Agent since October 2018. I received 16 weeks of training in drug investigations and related legal matters at the DEA Training Academy in Quantico, Virginia.

5.      Based upon my training, experience, and participation in other narcotics investigations, my accumulated knowledge from consultations with other law enforcement agents, and my debriefings of narcotics offenders, I know the following:

2

SWRET-124MC240-000003

a. Drug traffickers often cooperate and associate with a number of people involved in their illegal drug trafficking activity. As a result of the association and cooperation, the drug traffickers often possess documents and other items that identify other members of a drug trafficking organization. Drug traffickers commonly maintain addresses or telephone numbers of their criminal associates in phones, address books, journals, computer files or other types of papers, even if said items may be in code. Drug dealers keep such information readily available so that they may transact narcotics business quickly and, also, so that they may be in constant contact should questions or difficulties arise in the course of their illegal endeavors. Additionally, I know that the nature of the drug business frequently necessitates that a drug trafficker's criminal associates change locations and contact phone numbers. Therefore, in order to keep up with those associates, it is necessary to keep accurate records of each individual's contact phones and addresses.

b. With the advancement of technology, drug traffickers commonly use multiple SIM cards, mobile or cellular telephones, smart phones (including Android and iOS-based devices), personal digital assistants, electronic address books and pagers, as well as regular telephones, to conduct their drug trafficking business. These items are often kept where traffickers have ready access to them, including on their person, in their vehicles, and in their residences. These devices commonly contain information related to the drug

3

trafficking activities, including telephone numbers of their criminal associates, voice and text or other electronic messages with their criminal associates, and photographs of criminal activities, including photographs of drugs.

c. Drug traffickers utilize cell phones, computers, and other electronic media devices to communicate with co-conspirators (including, but not limited to, suppliers, couriers, stash house workers, and customers) coordinate the purchase/sale/distribution of narcotics. I know from my training and experience that drug traffickers also use "smartphones" for these purposes, including various multimedia and communication platforms and applications. In particular, I know from my experience that drug traffickers often use messaging features on applications, including, but not limited to, Facebook Messenger, WhatsApp, Instagram, Telegram, WeChat, and various other chat features within other applications.

d. Drug traffickers will often subscribe to various communication services in alias names in an attempt to thwart law enforcement efforts to identify traffickers. Drug traffickers will often store their associates' contact information in phones and index such information to nicknames or other aliases instead of true name.

e. Drug traffickers regularly pose for photographs while in possession of firearms, cash, and narcotics for posting on social media sites or for personal display in their residences.

4

SWRET-124MC240-000005

## Sources of Information

6.     I submit this affidavit based upon personal knowledge derived from my participation in this investigation, and information I have learned from discussions with other law enforcement investigators and agents, including information provided to them by confidential sources of information, defendants, and witnesses. This affidavit is also based on my review of written reports prepared by other law enforcement officers who have and are participating in this investigation.

7.     All statements set forth herein are stated in substance, unless otherwise indicated by quotation marks.  This affidavit references intercepted communications that took place in English. These interpretations and translations are drafts and subject to revision.  Additionally, I know that participants in criminal conspiracies often speak in code, which is subject to interpretation.  So, wherever in this affidavit I state a belief, that belief is my interpretation of what was said in the communication.  This belief is based upon my training, experience, and knowledge of this investigation.

8.     Because this affidavit is being submitted for the limited purpose of seeking authorization to search the **SUBJECT TELEPHONES**, I have not set forth each and every fact learned during the course of the investigation.  Facts not set forth herein are not being relied upon in reaching my conclusion that an order should be issued, nor do I request that the Court rely upon any facts not set forth herein in reviewing this affidavit.

5

**Probable Cause**

**Identification of Ernest DEAS as a Drug Supplier for Charles DUNN**

9.     DEA Atlanta is currently investigating an Atlanta drug distribution ring centered around Charles DUNN. Through the wiretap investigation, agents learned DUNN obtained multiple kilograms of cocaine at a time from Adan MACEDO, Ernest DEAS, and others, and he then supplied various quantities of narcotics to various conspirators in Georgia, South Carolina, North Carolina, Florida, Alabama, Tennessee, New York, and Ohio. Through the use of multiple phones, Facetime, and encrypted applications, such as WhatsApp, DUNN directed and coordinated multiple individuals in his drug network, including transporters, stash house coordinators, drug distributors, and drug sources. Agents have intercepted wire and electronic communications over cellular devices used by MACEDO and DUNN, along with other conspirators, pursuant to federal orders authorizing such interception.[1]

---

[1] There have been three periods of wiretap interception in this case. Agents first began intercepting communications over two phones used by MACEDO, assigned telephone numbers (470) 927-9767 (Target Telephone #1 or TT#1) and (678) 914-3630 (Target Telephone #2 or TT#2), and two phones used by DUNN, assigned telephone numbers (404) 452-2448 (Telephone #3 or TT#3) and (470) 526-4638, (Target Telephone #4 or TT#4), pursuant to a February 17, 2023 order from the Honorable Eleanor L. Ross, United States District Judge for the Northern District of Georgia (1:23-mj-170).

During the second interception period, pursuant to an April 6, 2023 order from the Honorable J.P. Boulee, United States District Judge for the Northern District of Georgia (1:23-mj-333), agents intercepted wire and electronic communications over DUNN's TT#3 and another phone used by MACEDO: (463) 248-7054 (Target Telephone #5 (TT#5)), and intercepted wire communications over a phone used by Ignacio GUDINO: (818) 233-1099 (Target Telephone #6 (TT#6)).

Agents were intercepting wire and electronic communications over DUNN's TT#3 and TT#4, pursuant to a June 16, 2023 order from the Honorable Steven D. Grimberg, United States District Judge for the Northern District of Georgia (1:23-mj-570). During that period of interception, on July 11, 2023, DUNN, MACEDO, and multiple other members of the DUNN DTMLO were arrested for federal drug crimes.

6

SWRET-124MC240-000007

**Arrests and Seizures to Date**

10.     During the investigation, agents have seized over 500 kilograms of cocaine and over $2 million in narcotics proceeds.

11.     During the investigation, agents worked with local law enforcement and arrested several of DUNN's cocaine transporters, including Marquis Smith on February 25, 2023 and Darrius Elliott on March 5, 2023.  Specifically, during the second interception period in April 2023, through intercepted communications over TT#3 as well as physical and electronic surveillance, agents determined that DUNN sent Afiba SMALL-John – a drug transporter—to Newark, New Jersey to obtain 13 to 15 kilograms of cocaine from Khanesavanh NHALAY a/k/a Somsanouk BOUPHAVONG. SMALL was traffic stopped on April 11, 2023 and law enforcement seized nine kilograms of cocaine and $55,545.00 in cash from his vehicle. Although DUNN was aware of the traffic stop and seizure (as demonstrated by subsequent intercepted communications), he did not cease distributing drugs. Agents believe the cocaine and the money were destined for DUNN in Atlanta, Georgia.

12.     DEA-Atlanta also coordinated the arrests of the additional couriers Stephen ALLEN, Dwight DICKERSON, Reynaud CHANDLER, and Tyshaun MOBLEY on June 25, 2023, June 28, 2023, and July 07, 2023 respectively. Additionally, DUNN and several members of the DTMLO were arrested on July 11, 2023 for federal drug crimes in the Northern District of Georgia.

SWRET-124MC240-000008

**February 2023 – 9 Kilogram Cocaine Deal in Ft. Lauderdale, Florida**

13.    Notably, during the first period of interception, DUNN, DEAS, SMALL-John, and others coordinated a nine-kilogram cocaine transaction in Ft. Lauderdale, Florida which agents determined was supplied by DEAS. In summary, DUNN acquired drug proceeds from the distribution of cocaine and directed Afiba SMALL-John from Atlanta, Georgia to Ft. Lauderdale, Florida in order to meet DEAS and replenish the cocaine supply.

14.    Specifically, through intercepted communications, agents learned the following information regarding the arrangements for the cocaine transaction:

a.    On February 19, 2023, at approximately 1:31 p.m., DUNN was intercepted contacting Afiba SMALL-John from TT#3. During the communication, SMALL inquired if Tuesday (meaning February 21, 2023) was still "100%" for Florida because SMALL wanted to book his ticket. DUNN reported he was certain and would confirm with SMALL at a later point in time.

b.    On that same date, at approximately 5:23 p.m., DUNN used TT#4 to contact DEAS, using the cellphone assigned number (313)-948-2753 ("**2753 Phone**").[2] DUNN informed DEAS that SMALL could not leave until Tuesday, February 21, 2023. DUNN told DEAS that SMALL wanted to verify that Tuesday was for certain so he could purchase a rental. DEAS said that he spoke to "lil bro", who indicated that he had "6". DUNN eluded that he was short "30". DUNN and DEAS continued conversing and DUNN

---

[2] Per T-Mobile records, the 2753 phone was activated on December 21, 2020 and subscribed in the name of Ernest DEAS.

8

SWRET-124MC240-000009

reported that he was "15-20" towards their goal. Based on my training and experience, I believe in this conversation DUNN and DEAS were trying to coordinate the collection of drug proceeds so DUNN could replenish his cocaine supply through DEAS.

15.    Over the course of the next few days, through various intercepted communications between DUNN, DEAS, and SMALL, agents intercepted communications where SMALL informed DUNN that he had arrived in Ft. Lauderdale, Florida. DUNN offered SMALL a higher courier rate since the transaction did not initially occur when SMALL arrived to Florida.

16.    Additional intercepted calls confirmed SMALL and DEAS conducted a 9-kilogram cocaine transaction prior to SMALL returning to Atlanta, Georgia. For example, on February 23, 2023, at 11:15 a.m., agents intercepted an outgoing call from DUNN, using TT#3, to SMALL. During the call, DUNN asked SMALL if he had looked at the items, believed to be narcotics, that SMALL had picked up in Florida. SMALL's description of the suspected narcotics indicated that they had not received the full amount that they expected. DUNN and SMALL discussed numbers, likely quantities of drugs, but did not specify what they were referring to.

17.    Later that evening after SMALL returned to Atlanta, at approximately 9:46 p.m., agents intercepted another call between DUNN, using TT#3, and SMALL.

During the call DUNN said, based on my understanding of the call, that he was able to look at the drugs that SMALL delivered and that they were acceptable, while

9

acknowledging the receipt of 9 kilograms of cocaine ("It wasn't too bad . It was a niner." It wasn't too shabby.")

18.    Last, on February 23, 2023, at approximately 10:27 p.m., following the call with SMALL, agents intercepted a call between DUNN and DEAS who confirmed the details of the transaction. Specifically, during the call, DUNN asked DEAS to confirm if DUNN's friend left with "9 O-Clock," which agents believe to be coded language to reference 9 kilograms of cocaine.

19.    Based on these various intercepted conversations, I believe SMALL at DUNN's direction, traveled to Ft. Lauderdale, Florida in order to replenish DUNN's cocaine supply. In doing so, SMALL met with DEAS in the Ft. Lauderdale/Miami area, acquired the cocaine, and then traveled back to the Northern District of Georgia, where DUNN accepted receipt of the narcotics.

20.    Additionally, I determined that, during this time period, the **2753 Phone**, attributed to DEAS, was in contact with a phone number associated with the hotel Candlewood Suites Miami International Airport. Through an administrative subpoena agent obtained records from Candlewood Suites Miami International Airport, which corroborated that DEAS was a guest at the hotel establishment from February 17, 2023 through February 23, 2023. The records show DEAS provided to Candlewood Suites his name, home address of "25043 Pierce St., Southfield, Michigan 48025," an email address of Mordeau60@gmail.com (the handle which is a combination of DEAS' middle and last name), and both the **2753 Phone** and (313) 978-2582 ("**2582 Phone**") as his contact

10

SWRET-124MC240-000011

numbers. Notably, DEAS's residential address per the State of Michigan DMV records is the same address provided to Candlewood Suites for DEAS.

**September 18, 2023 Encounter with DEAS and Seizure of 2582 Phone**

21. On September 18, 2023, agents located DEAS in West Memphis, Arkansas traveling to Texas. At that time, agents, including myself, served DEAS with a target letter and a search warrant for two cellular devices, the **2582 Phone** and the **2753 Phone**. Notably, agents seized the **2582 Phone** but did not locate the **2753 Phone**. Additionally, during our interaction with DEAS, a third phone that was previously identified was also located. DEAS was not arrested at that time as agents were still conducting an active investigation. Thereafter, the **2753 Phone** stopped being in active use, which agents believe to be a result of DEAS discontinuing use of the phone after his arrest in attempt to evade law enforcement detection. However, agent believe he obtained other devices to continue conducting his drug trafficking business which, based on my training and experience, is the normal operating procedure for traffickers.

**January 2024 - Criminal Complaint for Ernest DEAS & SUBJECT TELEPHONE 1**

22. On January 17, 2024 a criminal complaint was authorized by a U.S. Magistrate Judge in the Northern District of Georgia charging Ernest DEAS with violations of Title 21, United States Code, Section 841(a) and 846 (1:24-MJ-028), and an arrest warrant for DEAS was issued as well. Additionally, based upon toll analysis of DEAS's prior **2582 Phone** and **2753 Phones**, agents ultimately identified **SUBJECT TELEPHONE 1** as a replacement phone for DEAS and were authorized a federal geolocation search warrant for **SUBJECT TELEPHONE 1** (1:24-MC-115) on January 19,

11

SWRET-124MC240-000012

2024.

**Arrest of Ernest DEAS and Seizure of SUBJET TELEPHONES**

23.     Between January 20 to 24, 2024, agents utilized geo-location data from **SUBJECT TELEPHONE 1** to monitor DEAS' movements and observed that his device moved from Detroit, Michigan to Auburn, Alabama, which was approximately 35 minutes from the Northern District of Georgia. On January 24, 2024, through electronic surveillance, agents from DEA-Montgomery, DEA-Atlanta, and Auburn Police Department located DEAS at 2410 W Tech Lane, Auburn, AL. Specifically, DEAS was parked in a yellow 2015 Peterbilt conventional cab tractor, displaying a Michigan license plate, hooked to a white dry box trailer also displaying Michigan license plate. At approximately 1:03 a.m., agents verified DEAS was seated in the vehicle and alerted DEAS of his federal arrest warrant. DEAS complied with lawful commands and while DEAS was exiting the driver's seat, agents viewed DEAS place a cellular device on the driver's seat, later determined to be **SUBJECT TELEPHONE 1**. DEAS was then placed into custody without incident.

24.     Agents then conducted an inventory search of the semi-truck and seized the cellphone located on the driver's seat where DEAS was originally seated. Agents contacted the known phone number for **SUBJECT TELEPHONE 1** and verified that **SUBJECT TELEPHONE 1** was the device that was on the driver's seat where DEAS was seated. Specifically, when agents contacted the phone number, the caller identification illuminated on the front display of the phone, that showed an assigned DEA phone number.

25.     Additionally, DEAS directed agents to the location of **SUBJECT**

SWRET-124MC240-000013

**TELEPHONE 2,** which was concealed in in a brown paper bag on a desk, in the rear cab area. Agents asked DEAS who was the owner of **SUBJECT TELEPHONE 2** was and DEAS admitted the device was his, but was a "minute-based" phone only and out of service.

26.     Based upon my training and experience, and the investigation to date, I know that traffickers often times utilize multiple cellular devices in order to insulate themselves not only from law enforcement, but also in an effort to separate the hierarchy of the organization based upon specific phones. Further, I know traffickers often times obtain minute-based phones, which are commonly referred to as "burner phones". These devices are often used at times when a drug or money transaction are imminent and/or when traffickers want to speak with higher members of the organization. These devices do not require any subscriber information, monthly plans, and are heavily used in drug trafficking organizations in an attempt to thwart law enforcement.

27.     Following, the arrest of DEAS, agents transported DEAS to the Fayette County Sheriffs Office detention facility for temporary holding prior to being transported to the Atlanta Federal Courthouse for his initial appearance on the complaint.

28.     Agents also learned that in December 2023, based on toll records, **SUBJECT TELEPHONE 1** was in contact with a Bahamian-based phone number that agents have identified in this investigation as being a phone number used by a foreign cocaine source of supply.

29.     Based upon the investigation to date, I believe DEAS is a cocaine supplier for DUNN and agents have identified at least 5 cellular devices used by DEAS during the investigation. DEAS was intercepted calling DUNN to arrange and confirm the supply of

13

SWRET-124MC240-000014

nine kilograms of cocaine. Based on the foregoing, agents believe evidence of drug trafficking related to the importation of cocaine in the United States, contacts of members of the DTMLO, and/or messaging between DEAS and others may be stored in the **SUBJECT TELEPHONES**.

30.     Based on the foregoing, namely the **SUBJECT TELEPHONES** being in possession of DEAS, a cocaine supplier, who was previously intercepted on multiple occasions discussing supplying DUNN with cocaine, coordinating drug deals, and the fact, DEAS is a prior convicted drug trafficker, there is probable cause to believe that the **SUBJECT TELEPHONES** and their contents constitute evidence of a crime and property designed for use, intended for use, and used in committing a crime concerning a violation of Title 21, United States Code, Sections 841, 843, and 846.

### Further Statement of Probable Cause

31.     Based on my training and experience, I know that the **SUBJECT TELEPHONES** has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **SUBJECT TELEPHONES** first came into the possession of DEA agents.

32.     Based on my training and experience, I believe the **SUBJECT TELEPHONES** may have capabilities that allow them to access the internet, and to function as a telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on devices like the **SUBJECT TELEPHONES** can reveal, among other things, evidence identifying the persons who possessed or used the devices.  Moreover, I know that electronic devices such as the

14

SWRET-124MC240-000015

**SUBJECT TELEPHONES** can electronically store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

33.    *Forensic evidence.* As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT TELEPHONES** was used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **SUBJECT TELEPHONES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on the **SUBJECT TELEPHONES** can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

SWRET-124MC240-000016

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

34.  *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **SUBJECT TELEPHONES** consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

35.  *Manner of execution.*  Because this warrant seeks only permission to examine **SUBJECT TELEPHONES** already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

SWRET-124MC240-000017

## Conclusion

36.    I respectfully submit that there is probable cause to believe that there is presently concealed within the **SUBJECT TELEPHONES** described in **Attachment A** are the items described in in **Attachment B**, which may constitute evidence of a crime, and property designed for use, intended for use, or used to commit a crime, concerning violations of Title 21, United States Code, Sections 841, 843, and 846.

**End of Affidavit**

17

SWRET-124MC240-000018

**ATTACHMENT A**

The property to be searched consists of two cellular telephones seized by law enforcement officers during the execution of an arrest warrant on January 24, 2024, more particularly described as:

> **SUBJECT TELEPHONE 1**: a black Samsung Smartphone, Model no. SM-A146U, IMEI: 352096691489076, phone number (734) 217-6607, sealed inside DEA SSEE Bag S001154427, which was seized from Ernest DEAS, search incident to arrest, on January 24, 2024.

> **SUBJECT TELEPHONE 2**: a black TCL Smartphone, sealed inside DEA SSEE Bag S001154428, which was seized from Ernest DEAS, search incident to arrest, on January 24, 2024.

(collectively referred to as "**SUBJECT TELEPHONES**").

The **SUBJECT TELEPHONES** were seized following the arrest of Ernest DEAS on January 24, 2024, in Auburn, Alabama. The **SUBJECT TELEPHONES** are currently stored in a temporary storage locker vault housed inside the DEA Atlanta Field Division Office Strike Force Building, located at 2635 Century Parkway NE, Atlanta, Georgia 30345. The DEA-Atlanta Strike Force Building is situated within the Northern District of Georgia.

18

SWRET-124MC240-000019

# ATTACHMENT B

Upon completion of the forensic examination of the property described in Attachment A, the following particular items are subject to seizure by the government:

1.      All records, data, and files stored on the **SUBJECT TELEPHONES**, as described in Attachment A, that relate to violations of Title 21, United States Code, Sections 841, 843, and 846, which occurred between February 01, 2023 to January 24, 2024, including, but not limited to:

    a.  Lists of customers and related identifying information;

    b.  Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  Any information related to sources of drugs (including names, addresses, telephone numbers, or any other identifying information);

    d.  Any information regarding calendar, schedule or travel information;

    e.  All bank records, checks, credit card bills, account information, and other financial records;

    f.  Telephone number of the particular **SUBJECT TELEPHONES** and other identifying information for the **SUBJECT TELEPHONES** including ESN, IMSI, and IMEI;

    g.  Incoming and outgoing call data;

    h.  Dates and times of telephone calls;

    i.  Address book information (contact names and associated telephone numbers, photographs, addresses, and e-mail addresses)

19

SWRET-124MC240-000020

j.  Missed, received, and dialed calls;

k.  Text message log and text message content stored on the **SUBJECT TELEPHONES** pertaining to drug possession and trafficking including but not limited to prices, amounts, sizes, names, code, transportation, location, directions, and other methods and means of distribution;

l.  Stored images and/or videos, and e-mails pertaining to drug possession and trafficking including but not limited to prices, amounts, sizes, names, code, transportation, location, directions, and other methods and means of distribution;

m.  Records of attribution showing who used or owned the **SUBJECT TELEPHONES** at the time the data was created, edited, or deleted, such as logs, telephone books, unsaved usernames and passwords, documents, and browsing history;

n.  Internet history including tracking information for packages shipped via the United States Postal Service and other shipping carriers;

o.  Records of wire transfers and other money transfers including dates, times, amounts, and locations;

p.  Records and data that indicate the **SUBJECT TELEPHONES** locations including but not limited to metadata contained on images, internet history, applications, and text messages;

q.  Records of Internet Protocol addresses used; and

20

SWRET-124MC240-000021

r.  Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

21

SWRET-124MC240-000022

(USAO GAN 6/10) Search Warrant

# United States District Court

## NORTHERN DISTRICT OF GEORGIA

In the Matter of the Search of

Two Cellular Telephones seized on January 24, 2024 from Ernest M. Deas

**SEARCH WARRANT**
Case number: 1:24-MC-240
**UNDER SEAL**

TO: Special Agent Bruce J. Hernandez, and any Authorized Officer of the United States

Affidavit(s) having been made before me by Bruce J. Hernandez who has reason to believe that in the property described as:

   **Two Cellular Telephones seized on January 24, 2024 from Ernest M. Deas, as more fully described in Attachment A,**

in the Northern District of Georgia there is now concealed certain property, certain information, and certain data, namely,

   **See Attachment B,**

which constitutes evidence of a crime, contraband, fruits of crime, or items illegally possessed, and property designed for use, intended for use, or used in committing a crime, concerning violations of Title 21, United States Code, Section(s) 841(a), 843, 846.  I find that the affidavit(s) establishes probable cause to search for and seize the certain property, certain information, and certain data from the property described above.

YOU ARE HEREBY COMMANDED to execute this warrant on or before __Feb. 28, 2024__ (not to exceed 14 days) AT ANY TIME IN THE DAY OR NIGHT AS I FIND GOOD CAUSE HAS BEEN ESTABLISHED.  You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave a copy of the warrant and receipt at the place where the property was taken. The officer executing the warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge Justin S. Anand.

February 14, 2024 at 3:36 pm
Date and Time Issued

at   Atlanta, Georgia
City and State

JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer
AUSA Rebeca M. Ojeda

Signature of Judicial Officer
Issued pursuant to Federal Rule of
Criminal Procedure 4.1.

**ATTEST: A TRUE COPY
CERTIFIED THIS**

Date: Feb 14 2024

KEVIN P. WEIMER, Clerk

By: s/B. Evans
**Deputy Clerk**

SWRET-124MC240-000023

(USAO GAN 6/10) Search and Seizure Warrant (Page 2)

| RETURN | | |
|---|---|---|
| Case No: 1:24-MC-240 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of | | |
| A list of property/information/data/person(s) seized: | | |

**CERTIFICATION**

     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

_____
Date

_____
Executing officer's signature

_____
Printed name and title

SWRET-124MC240-000024

FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Feb 14 2024

KEVIN P. WEIMER , Clerk

By: s/B. Evans
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO SEARCH TWO CELLPHONES SEIZED ON JANUARY 24, 2024 | CRIMINAL ACTION NO. 1:24-MC-240<br><br>(UNDER SEAL) |

**MOTION TO SEAL WARRANT, APPLICATION, AND AFFIDAVIT**

The United States of America, by and through counsel, Ryan K. Buchanan, United States Attorney for the Northern District of Georgia, and Rebeca M. Ojeda, Assistant United States Attorney, respectfully requests that the search warrant for two cellphones seized on January 14, 2024 from Ernest M. Deas; application and affidavit (and any attachments thereto), this Motion to Seal, and any Order issued hereon in this matter be sealed for the following reasons:

The United States sought the instant warrant in connection with an ongoing investigation of the distribution of controlled substances in the Northern District of Georgia. As set forth in Special Agent Bruce Hernandez's Affidavit in support of the Government's Application for a Warrant, the warrant relates to an ongoing investigation. Consequently, public disclosure of the warrant, application, and affidavit (and any attachments), and/or this Motion will seriously jeopardize the investigation by causing the destruction of evidence, prompting the investigation's targets to flee, and driving their activities further underground. In re Sealed Affidavit(s) to Search Warrants, 600 F.2d 1256, 1257-58 (9th Cir. 1979);

see <u>Washington Post v. Robinson</u>, 935 F.2d 282, 290 (D.C. Cir. 1991); <u>see also</u> <u>United States v. Gomez</u>, 323 F.3d 1305, 1307 (11th Cir. 2003) ("The district courts have substantial supervisory powers over their records and files").

WHEREFORE, the United States of America respectfully requests that the Court issue an order directing the Clerk to maintain all of the above-referenced materials under seal until further order of this Court.

Respectfully submitted, this 14th day of February 2024.

RYAN K. BUCHANAN
*United States Attorney*

*Rebeca M. Ojeda*
REBECA M. OJEDA
   *Assistant United States Attorney*
600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
(404) 581-6046
(404) 581-6181 fax
GA Bar No. 713997

2

SWRET-124MC240-000026

FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Feb 14 2024

KEVIN P. WEIMER , Clerk

By: s/B. Evans

Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR A WARRANT TO SEARCH TWO CELLPHONES SEIZED ON JANUARY 24, 2024 | CRIMINAL ACTION NO. 1:24-MC-240<br><br>(UNDER SEAL) |

## ORDER

Having read and considered the Government's Motion to Seal and for good cause shown therein:

IT IS HEREBY ORDERED that the Clerk shall maintain all Warrants, Applications and Affidavits (and any attachments) along with the Government's Motion to Seal and this Order UNDER SEAL until further order.

SO ORDERED THIS __14____ day of February 2024.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

Prepared by
Rebeca M. Ojeda, Assistant United States Attorney
(404) 581-6046

SWRET-124MC240-000027