IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ERNEST MORDEAU DEAS,
a/k/a SHORTY

Criminal Action No.

1:23-CR-229-JPB-RDC-13

## Government's Opposition to Defendant's Motions to Suppress Evidence Seized from Electronic Devices and from iCloud Account

The United States of America, by Richard S. Moultrie, Jr., Acting United States Attorney for the Northern District of Georgia, and John DeGenova and Rebeca M. Ojeda, Assistant United States Attorneys, files this Response to Defendant Ernest Deas's Motion to Suppress Evidence Seized from Electronic Devices (Doc. 549) and Motion to Suppress Information Associated with iCloud Account (Doc. 550). Because Defendant has not met his burdens of showing either a legitimate expectation privacy in the seized devices and account or that any of the warrants were invalid, this Court should deny his motions. Moreover, even if the warrants were somehow defective, exclusion would be inappropriate, as the agents relied on the warrants in good faith.

### Relevant Background

#### A. Procedural History

On June 4, 2024, a grand jury sitting in the Northern District of Georgia returned a first superseding indictment charging fourteen defendants, including Ernest Deas and Charles Dunn, with multiple offenses, including drug, firearms,

1

and money laundering offenses. (Doc. 281). Defendant Ernest Deas was specifically charged in a conspiracy to possess with intent to distribute controlled substances (Count One), a conspiracy to import controlled substances (Count Three), and a substantive drug charge (Count Six). (*Id.*). On February 7, 2025, Defendant filed the instant motions. (Docs. 549, 550). These two motions challenge the sufficiency of three federal warrants to search certain electronic devices and an iCloud account. (*See* Doc. 549-1, September 18, 2023, Application and Search Warrant for Two Electronic Devices, 4:23-SW-168, E.D. Ark.; Doc. 549-2, February 14, 2024 Application and Search Warrant for Two Cellular Telephones, 1:24-mc-240, N.D. Ga.; Doc. 550-1, September 12, 2023 Application and Search Warrant for iCloud Account, 1:23-mc-1490, N.D. Ga.). All three warrant applications were supported by an affidavit by Drug Enforcement Administration (DEA) Special Agent Bruce Hernandez. As discussed below, the probable cause sections for the three warrants had significant overlap.

## B. General Factual Background

The warrants were sought as part of an investigation of drug trafficking and money laundering by DEA agents. Agents were investigating an Atlanta drug distribution ring centered around Charles Dunn. (Doc. 550-1 at 14). Agents determined that Dunn worked with multiple drug suppliers and transporters to distribute multi-kilogram volumes of cocaine to distributors in at least eight states, including Georgia. (*Id.* at 15-17). Agents obtained authorization from the United States District court for the Northern District of Georgia in three separate orders to intercept communications over phones used by Dunn (referred to as

TT3# and TT#4) and two of his suppliers, during three periods between February and July 2023. (*Id.* at 15 n.1). Through their investigation, agents seized large amounts of cocaine and drug proceeds from multiple of Dunn's transporters and suppliers. (*Id.* at 15-18).

Agents identified Defendant as one of Dunn's cocaine suppliers and intercepted him using two separate phones, one assigned 313-978-2582 ("the 2582 device") and the other assigned 313-948-2753 ("the 2753 device"), to communicate with Dunn about drug transactions. (Doc. 550-1 at 15, 17-18).[1] Following the July 11, 2023 arrests of Dunn and one of his transporters, both individuals identified Defendant as a cocaine supplier. (*Id.* at 18).

## C. Special Agent Hernandez's Training and Experience

All three affidavits detailed DEA Special Agent Hernandez's training and experience investigating drug trafficking, money laundering, and related offenses. (Doc. 550-1 at 9-13, Doc. 549-1 at 12-15, and Doc. 549-2 at 3-5). The affidavits set forth his nearly twelve years of training and experience working on drug investigations, including three years assigned to the narcotics section of a Florida Police Department, four years as a DEA Task Force Officer in Tampa, Florida, and nearly five years as a DEA Special Agent. (Doc. 550-1 at 9, Doc. 549-1 at 12, and Doc. 549-2 at 3). In addition to months of formal training by the DEA (including several courses in telecommunications interception and exploitation),

---

[1] *See also* Doc. 549-1 at 17-20 (repeating same information regarding background of DEA's investigation); Doc. 549-2 at 7-11 (summarizing background of investigation).

3

the affiant also had numerous opportunities for on-the-job training through conducting wiretap investigations, interviewing "scores" of drug traffickers and witnesses, analyzing drug traffickers' telephone billing records, and studying their patterns and practices. (Doc. 550-1 at 10-13, Doc. 549-1 at 12-15, and Doc. 549-2 at 3-5). Agent Hernandez explained he knew that drug traffickers use electronic devices to conduct and store information about their drug trafficking business, and also use multiple devices and subscribe to various communication services to avoid detection by law enforcement. (Doc. 550-1 at 10-12, Doc. 549-1 at 13-14, and Doc. 549-2 at 4-5). He also explained that interpretations of conversations in the affidavit were based on the investigation to date, "as well as on [his] training and experience as a DEA agent." (Doc. 550-1 at 14, Doc. 549-1 at 16, and Doc. 549-2 at 6).

**D. September 12, 2023 Search Warrant for iCloud Account**

On September 12, 2023, the Honorable Christopher C. Bly, United States Magistrate Judge for the Northern District of Georgia, issued a search warrant for the Apple iCloud account Mordeau60@iCloud.com (the iCloud account) in matter 1:23-mc-1490. (Doc. 550-1 at 34). The warrant was issued upon Agent Hernandez's application, which was supported by a 25-page affidavit, outlining Agent Hernandez's background and experience, and the probable cause for the warrant. (*See id*. at 9-33). The warrant's six-page Attachment B directed Apple Inc. (the service provider for the iCloud account) to disclose to the Government nine categories of information, including: account data, associated electronic devices, emails, messages, files and records, activity logs, location data, types of

4

service, and communications between Apple and users of the account. (*Id.* at 37-39). Then, the warrant authorized agents to search the disclosed information to seize information concerning evidence of violations of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. §§ 1956 and 1957 involving Charles Dunn, Defendant, and their conspirators, restricted to the time period November 2, 2022 to September 11, 2023. (*Id.* at 40-42). Pursuant to the warrant, agents could maintain a complete copy of the disclosed information, although agents were only permitted to seize information concerning the violations of law being investigated. (*Id.* at 42).

Within ten pages, Agent Hernandez's affidavit outlined relevant information regarding DEA's investigation of Dunn, Defendant, and other conspirators' drug trafficking operation. (Doc. 550-1 at 14-24). Agents determined that Defendant was the user of the iCloud account to be searched and that he was supplying Dunn with cocaine. (*Id.* at 18, 24). The affidavit specified that the iCloud account was associated with the 2582 device, which agents had intercepted Defendant using to communicate with Dunn and which telephone number was associated with Defendant on travel records to the Bahamas.  (*Id.*). These travel records were relevant because the investigation indicated that Defendant had traveled to the Bahamas to facilitate his and Dunn's cocaine trafficking. (*Id.* at 17-19).

The affidavit cited numerous, specific events during the investigation where agents seized cocaine from transporters and suppliers working with Dunn and the others. (*See id.* at 15-19). For example, on February 25, 2023, Dunn's transporter Marquis Smith was arrested on his way to see a drug customer in South Carolina and was found in possession of four kilograms of cocaine and a

loaded handgun. (*Id.* at 15). On March 5, 2023, Dunn and others coordinated a narcotics transaction where transporter Darrius Elliott retrieved four kilograms of cocaine from a drug supplier, on behalf of Dunn, and was subsequently arrested in possession of those drugs. (*Id.* at 15-16). In April 2023, Dunn coordinated with his transporter Afiba Small-John to travel to New Jersey to pick up cocaine from another drug supplier. (*Id.*). Small-John was later traffic stopped on his way back to Georgia in possession of 9 kilograms of cocaine and over $55,000 of drug proceeds, believed to be destined for Dunn. (*Id.*). Other narcotics seizures from Dunn's transporters or couriers were also referenced in the affidavit. (*Id.* at 17).

The affidavit provided pertinent excerpts of intercepted communications between Dunn, using TT#4, and Defendant, using the 2753 device. On June 26, 2023, Dunn contacted Defendant to coordinate a meeting between Defendant and one of Dunn's associates regarding the supply of 200 kilograms of cocaine from the Bahamas. (*Id.* at 19-22). That same day, Defendant provided Dunn with Defendant's "other number[,] [t]he 313-978-2582" (the 2582 device). (*Id.* at 22).

The affidavit also provided additional information regarding Apple iCloud accounts. (Doc. 550-1 at 25-31). Specifically, the affidavit explained how iCloud accounts enabled users to backup data, including communications and other records identifying the users of the account, to cloud servers which stored this information. (*Id.* at 25-26, 29).

All of this led Agent Hernandez to conclude that electronic communications and data constituting evidence of drug trafficking and money laundering would

be found on Defendant's iCloud account that was tied to the 2582 device, which was stored on Apple's servers. (*Id.* at 31).

**E.  September 18, 2023 Search Warrant for Two Electronic Devices**

On September 18, 2023, the Honorable Jerome T. Kearney, United States Magistrate Judge for the Eastern District of Arkansas, issued an anticipatory search warrant for two cellular devices (4:23-SW-168-JTK). (Doc. 549-1 at 35, 37). The warrant was issued upon Agent Hernandez's application, which was supported by a 20-page affidavit, outlining his background and experience, and the probable cause for the warrant. (*See, generally,* Doc. 549-1). The warrant authorized agents to search two devices, upon confirmation that the devices were in the Eastern District of Arkansas: (1) Apple iPhone 14 Pro Max, bearing cellular telephone number 313-978-2582 (the 2582 device) and (2) a cellular device bearing number 313-948-2753 (the 2753 device). (*Id.* at 31-32, 35, 37). The warrant's Attachment B specified that agents could seize from the devices two categories of information: (1) all records and information on the devices "from January 2023 through the present date, that relate to violations of 21 U.S.C. §§ 841, 843(b), and 846 that involve Ernest DEAS and others. . . " and (2) "[e]vidence of user attribution showing who used or owned" the devices. (*Id.* at 33-34). As for category one, the warrant listed and described the information to be seized, separated into twelve groups. (*Id.*).

On September 18, 2023, agents encountered Defendant near West Memphis, Arkansas, in the Eastern District of Arkansas, and seized the 2582 device from

him, although they did not find, seize, or search the 2753 device. (Doc. 549-2 at 12). As a result, there is no suppression issue as to the 2753 device.

There were ample facts included in the affidavit to support probable cause. Agent Hernandez's affidavit outlined relevant information regarding the investigation of Defendant and other conspirators' drug trafficking operation, as stated in the iCloud search warrant. (Doc. 549-1 at 17-19). Agents determined that Defendant was the user of the two electronic devices (the 2753 device and the 2583 device) to be searched and that he used those devices to facilitate trafficking of cocaine. (*Id.* at 20, 23, 26).

The affidavit cited to an event during the investigation during which Defendant, using the 2753 device, communicated with Dunn and others to coordinate the supply of kilograms of cocaine. (*See id.* at 20). Indeed, based on intercepted communications, in February 2023 Defendant met one of Dunn's transporters in Florida and provided cocaine to the transporter to replenish Dunn's drug supply. (*See id.*). Transportation records confirmed Defendant was in the Miami, Florida area during the planned transaction. (*Id.*).

As noted above, agents learned that Defendant was a frequent traveler to Nassau, Bahamas, including in mid-February 2023 a few days before the Miami drug transaction and again in March 2023. (*Id.* at 20, 23 n.2). The 2582 device was listed as Defendant's contact number on his travel records. (*Id.* at 20). Defendant was also communicating with Bahamian phone numbers using the 2582 device, and he is believed to have been coordinating the importation of cocaine from the Bahamas into the United States. (*Id.*). This belief was confirmed following the

June 26, 2023 phone call between Dunn and Defendant (using the 2753 device) regarding the supply of 200 kilograms of cocaine from the Bahamas. (*Id.* at 20-23).

Although the 2753 device was disconnected a few weeks after Dunn's July 2023 arrest, (*id.* at 19), the affidavit states that in August 2023, Defendant was still using the 2582 device to communicate on multiple occasions with another conspirator who had been intercepted on the wire discussing multi-kilogram drug transactions with Dunn. (*Id.* at 25). From August 2 to September 4, 2023, the 2585 device was also used to communicate with Bahamian phone numbers 114 times, and some of these numbers were associated with individuals involved in drug trafficking. (*Id.*).

Agent Hernandez discussed in the affidavit his understanding about how and why drug traffickers use numerous electronic devices, and the type of evidence maintained on such devices, including records of financial transactions, communications, and photographs. (*Id.* at 27-28). All of this led Agent Hernandez to conclude Defendant had used the devices and was still using the 2582 device to facilitate drug trafficking, and that evidence regarding the commission of such criminal offenses would be found on the devices. (*Id.* at 30).

## F. February 14, 2024 Search Warrant for Two Cellular Telephones Seized on January 24, 2024 from Deas

On February 14, 2024, the Honorable Justin S. Anand, United States Magistrate Judge for the Northern District of Georgia, issued a search warrant for two cellular telephones, which were seized on January 24, 2024 from

Defendant in matter 1:24-mc-240. (Doc. 549-2 at 23). The warrant was issued upon Agent Hernandez's application, which was supported by a 17-page affidavit, outlining Special Agent Hernandez's background and experience, and the probable cause for the warrant. (*See, generally, id*.). The warrant authorized agents to search two devices: (1) a black Samsung smartphone, assigned phone number 743-217-6607 ("the 6607 device") and (2) a black TCL smartphone ("TCL device"). (*Id*. at 19). The warrant's Attachment B specified that agents could search the devices and seize all records, data, and files on the devices from February 1, 2023 to January 24, 2024, that relate to violations of 21 U.S.C. §§ 841, 843(b), and 846. (*Id*. at 20-22). The warrant listed and described 18 categories of information to be seized. (*Id*.).

The Government will not introduce any information from the TCL smartphone in its case-in-chief against the Defendant; thus, the motion is moot as to that device.

Agent Hernandez's affidavit for this search warrant again provided general information about the drug conspiracy but added detail about the people who supplied cocaine to Dunn, including Defendant, and the various states where the drugs were distributed. (Doc. 549-2 at 7). The affidavit noted that agents had seized over 500 kilograms of cocaine and over $2 million in narcotics proceeds during the course of the investigation. (*Id.* at 8). The affidavit provided additional details about the February 23, 2023 cocaine transaction and the intercepted communication between Dunn and Defendant, using the 2753 device, about the deal. (*Id.* at 9). Dunn and Defendant discussed the date when Dunn's transporter

10

would fly to Florida to pick up cocaine. (*Id.* at 9-10). Additional calls confirmed that Dunn's courier arrived in Ft. Lauderdale, Florida during the same time that travel records showed Defendant was checked into a hotel near Miami International Airport. (*Id.* at 10, 11). The affidavit discusses additional intercepted calls from February 23, 2023 between Dunn and his courier, who confirmed that he had obtained the items in Florida and then drove to Georgia where he delivered "a niner," which agents believed to be code for nine kilograms of cocaine. (*Id.* at 10-11). Dunn then called Defendant to confirm that the amount provided to the courier was "9 O-clock," also believed to be code for kilograms of cocaine. (*Id.* at 11).

The affidavit discussed how, on September 18, 2023, Defendant was encountered by law enforcement in West Memphis, Arkansas, and that law enforcement seized, pursuant to the previously discussed search warrant, the 2582 device from Defendant but that they could not locate the 2753 device. (*Id.* at 12). It stated how agents determined Defendant was using the 6607 device as a replacement phone for the 2582 and 2753 devices, based on an analysis of toll data among the phones. (*Id.*). It also included how law enforcement, while executing a federal arrest warrant for Defendant on January 24, 2024, observed the 6607 device on the driver's seat of Defendant's tractor trailer. (*Id.* at 13). Defendant also directed agents to the location of the TCL phone, which was concealed in a brown paper bag in the rear cab area of his truck. (*Id.* at 13-14).

Agent Hernandez stated that Defendant had used at least five devices during the investigation and had been intercepted coordinating the supply of at least 9

11

kilograms of cocaine. (*Id.* at 14-15). The agent also noted, based on his training and experience, that it is the normal operating procedure for drug traffickers to change the phones they are using to evade law enforcement detection while still conducting drug trafficking business over various devices. (*Id.* at 4, 5, 12). Indeed, even in December 2023, the 6607 device was in contact with at least one Bahamian-based phone number agents identified as being used by a foreign cocaine supplier. (*Id.* at 14).

All of this led Agent Hernandez to conclude that evidence of drug trafficking would be found on Defendant's new phones—the 6607 device and the TCL device. (*Id.* at 15).

### Argument and Citation to Authority

Defendant's motions should be denied for several reasons. *First*, he has not established a reasonable expectation of privacy in the searched devices or account, nor to contest the legality of the wiretaps cited in the supporting affidavits. *Second*, he has failed to meet his burden of demonstrating that the warrants lacked probable cause. The Court's task in assessing Defendant's challenges is to determine simply whether the issuing magistrates had a substantial basis to conclude that probable cause existed. The supporting affidavits established through significant and concrete evidence that Defendant and others were conspiring to and were distributing cocaine and that information and communications about this illegal activity were likely to be found in the devices and account. *Third*, suppression is not warranted as agents relied in good faith on the warrants finding probable cause.

## A. Defendant has not shown a legitimate expectation of privacy to challenge the seized electronic devices, the iCloud account, or the wiretaps.

Defendant's motion fails to establish a reasonable expectation of privacy. To establish Fourth Amendment "standing" to challenge a search, a defendant bears the burden of demonstrating a legitimate expectation of privacy in the invaded area. *United States v. Cooper*, 133 F.3d 1394, 1398 (11th Cir. 1998). A defendant must establish both a subjective and an objective expectation of privacy. *United States v. Segura-Baltazar,* 448 F.3d 1281, 1286 (11th Cir. 2006). "The subjective component requires that a person exhibit an actual expectation of privacy, while the objective component requires that the privacy expectation be one that society is prepared to recognize as reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also United States v. Miravalles*, 280 F.3d 1328, 1331 (11th Cir. 2002).

A defendant, as the proponent of a motion to suppress, has the burden to prove that his own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Black*, 801 F. App'x 695, 696 (11th Cir. Feb. 7, 2020) (citing *United States v. Bachner*, 706 F.2d 1121, 1125 & n.5 (11th Cir. 1983)). As such, a defendant "cannot adopt the government's evidence . . . for the limited purpose of establishing standing while challenging the validity of the same evidence." *United States v. Bell*, 218 F. App'x 885, 895 (11th Cir. Feb. 23, 2007). This basic requirement does not prejudice the defendant.[2]

---

[2] A defendant can choose to testify in support of a motion to suppress evidence on Fourth Amendment grounds, and "his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." *Simmons v. United States*, 390 U.S. 377, 394 (1968); *see also United States*

Standing is a "threshold issue" that "must" be addressed in considering a motion to suppress. *United States v. Jackson*, 618 F. App'x 472, 474 (11th Cir. June 29, 2015) (citing *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)); *see also United States v. Thompson*, 171 F. App'x 823, 827-28 (11th Cir. Mar. 27, 2006) ("[C]ourts must determine whether a defendant has established standing to bring the motion to suppress by sufficiently alleging that he possessed a reasonable expectation of privacy in the area searched."). A defendant cannot rely on general, conclusory, or vague assertions to establish standing. *United States v Lockett*, 533 F. App'x 957 (11th Cir. Aug 28, 2013) (citing *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985)). Nor may a defendant rely on the Government's theory of the case. *Thompson*, 171 F. App'x at 828 (holding that the alleged fact that the Government contended a room to be rented by defendant was insufficient to justify a hearing).

Here, Defendant has not sufficiently alleged a reasonable expectation of privacy in any of the electronic devices or the iCloud account. Instead, Defendant only obliquely refers to "his cell phones" and "his ICloud account." (*See* Doc. 549 at 1-2, Doc. 550 at 1-2). These unsworn statements in his motions are insufficient to carry his burden. *See Cooper*, 203 F.3d at 1285. Defendant has not submitted any evidence or even alleged facts to establish his reasonable expectation of privacy. Indeed, Defendant does not even adopt the fact that the electronic

---

*v. Salvucci*, 448 U.S. 83, 90 (1980) (noting that the protection afforded by *Simmons* is a "form of 'use immunity'").

devices were seized by law enforcement. (*See* Doc. 549). Accordingly, Defendant's failure to show a legitimate expectation of privacy is sufficient grounds to deny his motions.

Defendant also challenges the searches of the iCloud account and the electronic devices as improper since the affidavits in support of the search warrants relied, in part, on wire and electronic intercepts. (Doc. 549 at 2, Doc. 550 at 2). However, Defendant has failed to show standing as to any of the intercepted communications obtained in this case.

To contest a wiretap order permitting the interception of communications, a defendant must establish that he was an "aggrieved person." 18 U.S.C. § 2518(10)(a). An aggrieved person is defined as "a person who was a party to any intercepted . . . communications or a person against whom the interception was directed." *See* 18 U.S.C. § 2510(11). The Supreme Court has explained that one seeking to suppress intercepted communications must allege and establish that "he himself was the victim of an invasion of privacy." *Tones v. United States*, 362 U.S. 257, 261 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83 (1980); *see also Alderman v. United States*, 394 U.S. 165, 176-178 (1969) (explaining the definition of "aggrieved person" is "construed in accordance with existing standing rules"). The defendant, as the proponent of a motion to suppress, has the burden to prove that his own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Black*, 801 F. App'x 695, 696 (11th Cir. Feb. 7, 2020) (citing *United States v. Bachner*, 706 F.2d 1121, 1125 & n.5 (11th Cir. 1983)).

Here, Defendant does not put forth *any* evidence to show he was a party to any intercepted communication on the wiretaps. He merely states "the wiretaps were unlawfully obtained" without explaining how he has standing to challenge the wiretaps or even the reason for his conclusory assertion. (Doc. 549 at 2). Defendant, at a minimum, could submit affidavits or stipulations supporting how he is an aggrieved person pursuant to 18 U.S.C. § 2518(10)(a), but he has failed to do so. *See, e.g.*, *United States v. Acosta*, 807 F. Supp. 2d 1154, 1234-35 (N.D. Ga. 2011) (stipulations); *United States v. Booker*, 1:11-cr-255-TWT, 2013 WL 2468694, at *10-11 (N.D. Ga. Jun. 7, 2013) (affidavits). Given the dearth of any proffered evidence (or argument) as to standing, the Court should disregard the wiretap argument as insufficient to constitute a legitimate challenge to the search warrants for the iCloud account and electronic devices.

## B. The affidavits established probable cause to search the electronic devices and iCloud account.

The affidavits detailed a wiretap investigation into a large-scale drug distribution operation focused around Charles Dunn. The affidavits explained that intercepts and other evidence showed how Defendant was conspiring to import cocaine and distribute it with Dunn. Probable cause exists when, under the totality of the circumstances, there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Noriega*, 676 F.3d 1252, 1261 (11th Cir. 2012). "Probable cause deals with 'probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'"

*Illinois v. Gates*, 462 U.S. 213, 241 (1983). In considering probable cause, reviewing courts should not engage in a "hypertechnical" interpretation of affidavits, but should employ "a realistic and commonsense approach" to afford a "high level of deference" to the magistrate issuing the warrant. *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994). A reviewing court should not conduct a de novo determination of probable cause, but only determine whether there is substantial evidence in the record to support the judge's decision to issue a warrant. *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984). Further, the affidavit should be considered as a whole, and courts should avoid "judging bits and pieces of information in isolation." *Id.* at 732. The defendant bears the burden of establishing that a search warrant is defective.

Defendant attacks the probable cause supporting the warrants through a summary argument that the applications were based "largely on agent summaries" of wiretapped call and "conclusory statements by the agent." (Docs. 549 at 2, 550 at 1). He then asserts that the wiretaps were unlawfully obtained and that evidence obtained from them should be suppressed, and then summarily claims that no probable cause exists for the devices. (Docs. 549 at 2), 550 at 1-2). Defendant offers no basis to contest any of the information in the affidavits about the wiretaps or otherwise. Nor does he even suggest any grounds for why the wiretaps were unlawfully obtained.

A wiretap order, like a search warrant, is presumed valid, placing the burden of persuasion to establish its invalidity firmly upon the defendant. *United States v. Mitchell*, 274 F.3d 1307, 1310-11 (10th Cir. 2001) ("a wiretap authorization order

17

is presumed proper, and a defendant carries the burden of overcoming this presumption"); *see also United States v. Bercoon*, case no. 1:15-cr-022-LMM-JFK, 2016WL11717711, at *11 (N.D. Ga. Aug. 31, 2016) (same). Defendant's completely unsupported argument challenging the wiretap orders and his request to suppress evidence obtained from them, should be deemed insufficient to undermine the probable cause finding as to the iCloud and electronic device search warrants. Of note, co-defendants in this case have raised specific challenges to the legality of the wiretaps at-issue in their own suppression motions, (Docs. 491, 533), one of which has been adopted by Defendant. (*See* Doc. 591).[3] The Court will address any legitimate legal challenges to the wiretap orders upon resolution of the suppression motion Defendant has adopted—but the Court need not do so in ruling on the suppression motions at-issue here.

Also, as discussed above, the affidavits for all the challenged warrants provided extensive detail about a large and sophisticated drug trafficking operation and, contrary to Defendant's claims, provided specific quotes and not mere summaries of the conspirators' electronic and wire communications regarding their illegal activity. (Docs. 549-1 at 17-20, 549-2 at 7-11, 550-1 at 15-18, 22). The affidavits included information about seizures of narcotics and of drug

---

[3] Although the face of Defendant's pleading appears to adopt a suppression motion involving confidential informants, the citation and exhibit refer to the adoption of Defendant Charles Dunn's motion to suppress intercepted wire and electronic communications (Doc. 533). (*See* Docs. 591 at 1; 591-1). The undersigned believes Defendant intended to adopt Dunn's motion to suppress wiretap communications when Defendant filed Docket No. 591.

proceeds during the investigation as well. (*Id.*). The affidavit discussed Defendant's use of electronic devices to communicate not only with Dunn but also with suspected foreign sources of cocaine, (*id.*), communications which continued even after Dunn was arrested. (Docs. 549-1 at 25, 549-2 at 14). Moreover, Agent Hernandez included his experience and conclusions about how drug traffickers store information about their trafficking activities and contacts on cellphones, (Doc. 550-1 at 10-12, Doc. 549-1 at 13-14, and Doc. 549-2 at 4-5), in reaching a probable cause determination that evidence of narcotics offenses would be found on Defendant's iCloud account and electronic devices. The Court was able to consider Agent Hernandez's experience and conclusions in reaching its probable cause determination. *See United States v. Leach*, 498 F. App'x 915, 917 (11th Cir. 2012) ("Opinions and conclusions of experienced agents regarding a set of facts are a factor in the probable cause equation.").

Given the nature and scope of this criminal conduct, the Magistrate Judge reasonably concluded that Defendant communicated and kept records electronically on cellular phones and an iCloud account. Considering the totality of the affidavit's facts, including the conclusions of an experienced DEA agent, the federal magistrate judge was more than justified in reaching the commonsense conclusion that evidence would be found on Defendant's iCloud account and electronic devices.

## C. **The warrants were not overbroad.**

The Fourth Amendment requires search warrants to "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const.

amend. IV. "This requirement is aimed at preventing 'general, exploratory rummaging in a person's belongings.'" *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). "A description is sufficiently particular when it enables the searcher to reasonably ascertain and identify the things authorized to be seized." *Id.* "It is universally recognized that the particularity requirement must be applied with a practical margin of flexibility, depending on the type of property to be seized, and that a description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit." *Id.* at 1349; *see also United States v. Rousseau*, 628 F. App'x 1022, 1025-26 (2015) (reiterating same and noting that warrants limiting seizure of items to only those items constituting evidence of criminal activity satisfies particularity requirement "where it is not feasible at the time the warrant is issued to give an exact description of the materials to be seized"). The Supreme Court and Eleventh Circuit have "recognized that effective investigation of complex white-collar crimes may require the assembly of a 'paper puzzle' from a large number of seemingly innocuous pieces of individual evidence[.]" *Id.* (citing *Andresen v. Maryland*, 427 U.S. 463, 482 n.10 (1976)).

Moreover, courts have repeatedly rejected overbreadth arguments where, as here, the scope of the items to be seized was limited to evidence of particular crimes. *United States v. Manning*, No. 1:19-CR-00376-TWT-RGV, 2021 WL 5236660, at *12 (N.D. Ga. Aug. 20, 2021) ("particularity requirement of the Fourth Amendment was satisfied . . . because the warrant identified the types of

20

property authorized to be seized and indicated the crimes involved for which evidence was sought"), *report & rec. adopted sub nom. United States v. Sterling*, 2021 WL 5280567 (N.D. Ga. Nov. 12, 2021); *United States v. Harvey*, No. 1:15-CR-00053-TWT-RGV, 2015 WL 9685908, at \*13 (N.D. Ga. Nov. 30, 2015), *report & rec. adopted by* 2016 WL 109984 (N.D. Ga. Jan. 8, 2016) (warrants were not overbroad where they were limited to evidence of particular crimes).

Where a warrant establishes a nexus between the crime alleged and a phone, courts have recognized that a thorough search of the phone is the only practical way to determine whether it contains evidence of the crime alleged or any other information responsive to the specific categories of information set forth in the warrants. *Harvey*, 2015 WL 9685908, at \*14; *United States v. Intakanok*, No. CR 114-060, 2014 WL 4825368, at \*8 (S.D. Ga. Sept. 25, 2014) (Hall, J. *adopting* Epps, M.J.); *see also United States v. Richards*, 659 F.3d 527, 539–40 (6th Cir. 2011) (noting that "federal courts have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers" and that where a "computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence").

Here, the warrants included detailed and particularized lists of the items to be seized in each Attachment B, consistent with the information set forth in the affidavits. (Docs. 549-1 at 33-4, 549-2 at 20-22, 550-1 at 37-39). Considering Agent Hernandez's experience with drug trafficking and money laundering

21

investigations and the instant case involving a multi-state drug trafficking scheme, the warrants for the electronic devices properly authorized the seizure of items related to drug trafficking and the warrant for the iCloud account appropriately authorized seizure of items related to drug trafficking and money laundering. (*See id.*). The scope and nature of the trafficking conspiracy made it unfeasible to give exact descriptions of evidence to be seized.

In his motions, Defendant asserts that the warrants were overbroad because they allowed agents to "generally rummag[e]" through the phones and iCloud account without any limitation. (Docs. 549 at 2-3, 550 at 2). However, Defendant ignores that the warrants included (1) specific types of information that could be seized from the phones and iCloud account; (2) that any seized evidence needed to relate to the investigated offenses; and (3) that the seized evidence needed to fall within specified date ranges tied to the investigation. (Docs. 549-1 at 33-4, 549-2 at 20-22, 550-1 at 37-39). These search parameters show that the warrants were not overly broad, as alleged by Defendant, but rather appropriately limited and specifically tied to the investigated offenses.

Defendant also complains about the method of the search, because agents needed to review all provided cellphone and iCloud data to determine what information they could actually seize pursuant to the warrant. (Docs. 549 at 2-3, 550 at 2). But this ignores the realities of electronic searches. There is no other practical way to seize specific, relevant evidence contained on an electronic device or iCloud account other than to review all the data available on that device or account. By comparison, this is the same method agents use to search a

house for evidence– agents search the entire house to find and seize evidence tied to the offense conduct established in the affidavit. Read in context, the warrant clearly did not allow agents to "generally rummage[e]" through electronic data without any limitation. (*See* Docs. 549 at 2-3, 550 at 2).

In his motions, Defendant does not identify a single piece of evidence or data listed in the warrants that was overly broad or unconnected to the offenses established in the affidavit. And indeed, he cannot. The affidavit describes how Defendant and his associates were communicating over electronic devices to facilitate drug trafficking over the course of several months. As discussed, the affidavits contain explanations about the significance of the information and data to be seized from the devices and iCloud account used by Defendant, and the warrants limited the types and amount of data to be seized. Here, the categories of items in the Attachment B for each warrant were narrowly tailored to include only items evidencing violations of narcotics and/or money laundering offenses as established in the affidavits.

## D. Even if the warrants were in some way defective, agents reasonably relied on them in good faith.

Even if the warrants were lacking probable cause or were overly broad, the good faith exception to the exclusionary rule would apply. The exclusionary rule's deterrent effect is negated where law enforcement agents act in an "objectively reasonable belief that their conduct does not violate the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 918 (1984). Under the *Leon* good faith exception, evidence obtained by agents who rely in good faith on an

23

otherwise invalid warrant should not be suppressed. *Id*. at 922-25. There are four limited exceptions to this rule: (1) where the magistrate issuing the warrant was misled by information that the affiant knew was false or would have known was false except for reckless disregard of the truth; (2) where the issuing magistrate wholly abandoned her judicial role; (3) where the search warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant was so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id.* As to the fourth exception, the good faith exception applies to the particularity requirement, such that even if a warrant is facially deficient, evidence will not be suppressed if officers relied on it in good faith. *Travers*, 233 F.3d at 1330. The Defendant does not address whether any of the limited exceptions to the good faith rule apply.

Even so, Defendant cannot show that any of these exceptions would apply. There is no suggestion that the magistrate judge was misled or wholly abandoned his judicial role. And Defendant cannot show the affidavit was so lacking in indicia of probable cause or facially deficient that the agents could not have relied on it. To exclude evidence on this ground, the "affidavit must be so clearly insufficient that it provided no hint as to why police believed they would find incriminating evidence." *United States v. McCall*, 84 F.4th 1317, 1325 (11th Cir. 2023) (quotations and citations omitted).

As discussed above, the affidavits described a large-scale drug trafficking conspiracy involving Defendant, Dunn, and others. They documented evidence

24

of the conspirators' operation to obtain kilogram quantities of cocaine and transport it across state lines. They showed that Defendant and Dunn communicated using electronic devices to coordinate narcotics transactions. They cited Agent Hernandez's experience with drug traffickers' use of cellphones and linked Defendant and his conspirators' use of cellphones, and thereby the associated iCloud account, to their conspiracy. Similarly, the warrants detailed categories of items that agents were allowed to search, which were tailored to the specific crimes under investigation. The officers could reasonably have believed that the warrants' narrowed categories fell within their practical margin of flexibility for the investigative task at hand. In short, agents relied on the warrant reasonably and in good faith.

## Conclusion

For all the reasons stated above, the Government respectfully requests that the Court deny Defendant's motions to suppress evidence from electronic devices and an iCloud account.

Respectfully submitted,

RICHARD S. MOULTRIE, JR.
*Acting United States Attorney*

/s/JOHN T. DEGENOVA.
*Assistant United States Attorney*
Georgia Bar No. 940689
John.DeGenova@usdoj.gov

/s/REBECA M. OJEDA
*Assistant United States Attorney*
Georgia Bar No. 713997
Rebeca.ojeda@usdoj.gov

25