IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| | CRIMINAL ACTION NO. |
| v. | 1:23-cr-00229-JPB-RDC-13 |
| ERNEST MORDEAU DEAS, A/K/A SHORTY, | |
| Defendant. | |

### NON-FINAL REPORT AND RECOMMENDATION

This criminal case is before the Court on Defendant Ernest Deas's Motion to Suppress Evidence seized from Electronic Devices and Motion to Suppress Information associated with iCloud Account, [Docs. 549, 550]. The Government filed its response on April 11, 2025, [Doc. 609]. The deadline established for filing a reply brief has passed. Thus, the motions are ripe for judicial review. Following careful review of the Defendant's pleadings, the Government's response and the applicable law, the undersigned **RECOMMENDS** that both motions be **DENIED.**

**Factual and procedural background**

On June 4, 2024, Mr. Deas was named in a twenty-nine count Superseding Indictment charging him with conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §846 (Count One) and conspiracy to import cocaine in violation of 21 U.S.C. §§ 960(b)(1)(B) and 963 (Count Three) along with co-conspirator Charles Dunn. [Doc. 281 at 1, 4]. The Superseding Indictment also alleges that he aided and abetted Mr. Dunn, Afiba Small John and William Lowery III by knowingly possessing with the intent to distribute at least five kilograms of cocaine on February 23, 2023 in violation of 21 U.S.C. §846(a)(1) and 18 U.S.C. §2 (Count Six). [*Id*. at 6-7]. The charges against Mr. Deas and his co-conspirators stem from their alleged trafficking of several kilograms of cocaine and fentanyl from January, 2022 to July 11, 2023. [*Id*. at 1-3].

!!!!!!Federal agents with the Drug Enforcement Agency ("DEA") obtained multiple search warrants between September 2023 and February 2024 related to this alleged conspiracy. [Doc. 550-1 at 34; Doc. 549-1 at 37; Doc. 549-2 at 23].[1]  These warrants authorized searches of Mr. Deas's cellular telephones and his Apple iCloud account. The warrant applications, authored by DEA Special Agent Bruce Hernandez, were

---

[1]  All citations to the Parties' pleadings and their exhibits will refer to the Clerk's CM/ECF page numbering at the top of each page.

based on the Agency's years-long investigation into the drug trafficking organization orchestrated by Mr. Dunn and Adan Macedo-Rios; an enterprise that involved at least 20 co-conspirators. [Doc. 281 at 1-3]. As a result, the historical background and investigative findings submitted in each of the applications are similar.

On September 12, 2023, Special Agent Hernandez requested a  search warrant for Mr. Deas's iCloud account: Mordeau60@iCloud.com. [Doc. 550-1]. In his Affidavit, he stated that his agents had begun intercepting communications seized from cellphones used by Mr. Macedo and Mr. Dunn from at least February, 2023. [*Id*. at 15, n. 1]. Their investigation revealed that Mr. Deas was utilizing one of his cellphones (313) 978-2582 (hereafter #2582) in furtherance of the conspiracy:

> DUNN sent SMALL-John to Ft. Lauderdale, Florida in February 2023 to meet DEAS in order to replenish DUNN's cocaine supply. Not only was this incident verified by DUNN and SMALL-John, toll records corroborate this information, and agents intercepted DEAS (using the 2753 number), DUNN, and SMALL-John coordinating the event, coupled with hotel and flight records that agents recently acquired placing DEAS in the Miami, Florida area during the transaction. Following the dismantlement of the DUNN network, agents have continued the investigation on DEAS. The 2582 phone**,** which is associated with Subject Account 1, is a device that is actively being used by DEAS, [and] has an active WhatsApp profile assigned to the 2582 phone.

[Doc. 550-1 at 18].

The Affiant also described a subsequent transaction coordinated by Mr. Dunn with the assistance of Mr. Deas and another co-conspirator. [Doc. 550-1 at 18-22]. He

explained how drug traffickers typically use cellphones to facilitate their crimes and how he verified Mr. Deas's connection to the iCloud account:

> I received from Apple, with subscriber information for the iCloud account associated with the 2582 phone (Subject Account 1) Apple provided the Apple ID as Mordeau60@iCloud.com (Subject Account 1) and the name of the account holder as Ernest DEAS, with a physical address of 25043 Pierce St., Southfield, Michigan. Notably, DEAS uses this address for hotel, flight, and his driver's license information.

[Doc. 550-1 at 24].

Based on the descriptions of the co-conspirators' transactions and Mr. Deas's utilization of his devices during the course of the conspiracy, the Magistrate Judge found probable cause supported issuance of a search warrant for the iCloud account. [*Id*. at 34].

A few days later, Special Agent Hernandez applied for an anticipatory warrant in the Eastern District of Arkansas.[Doc. 549-1]. On September 18, 2023, he submitted an application to search two cellphones - #2582 and (313) 948-2753 (hereafter #2753).  In support of this request, he explained that the suspects' devices were being monitored and that those belonging to Mr. Deas were being used to conduct narcotics transactions:

> During this call, agents intercepted DUNN and DEAS over TT#4, with DEAS requesting money via Zelle. However, DEAS asked DUNN to send the money to the TARGET DEVICE 1 to complete the monetary transaction. DUNN told DEAS that he found an associate that could assist in the matter ("Hey buddy, hey I just found, my, uh, nephew said

that he could Zelle something for me. So, uh ... "). DEAS acknowledged ("Okay"). DUNN asked if he should instruct his associate to Zelle the money to the 2753 number ("So he- Just Zelle it to this number?"), but DEAS requested the transaction occur over the TARGET DEVICE 1 instead ("Uh, you know what Zelle it to the other number."). DEAS recited the TARGET DEVICE 1 contact number (313) 978-2582 ("three, one, three, nine, seven, eight, two, five, eight, two."). DUNN asked DEAS to send him a text message containing the phone number ("Can you text it to me?"), but DEAS said he would recite the phone number again ("I'ma give you my phone number. Ready?"). DEAS then relayed the contact number for the TARGET DEVICE 1 for a second time and indicated his name "Ernest" ("Three, one, three, nine, seven, eight, two, five, eight, two. That's Ernest.").

[Doc. 549-1 at 24].

The Affiant claimed that toll records showed Mr. Deas used #2582 to communicate with Mr. Lowery on dozens of occasions.[Doc. 549-1 at 25].  Based on these records and Mr. Lowery's prior criminal history, the agents believed Mr. Lowery was a "poly-drug trafficker who was supplied cocaine and methamphetamine by DUNN, was charged with cocaine trafficking with DEAS in the 2005 DEA South Carolina investigation, and, based on flight records, traveled to the Bahamas with DEAS in March 2023." [*Id*.]. Special Agent Hernandez also explained that the agents' observations of Mr. Deas's behavior led them to conclude that he would be in possession of these devices as he traveled through the Eastern District of Arkansas.[*Id.* at 25-27]. The Magistrate Judge issued the warrant, finding that the Affidavit was supported by probable cause. [*Id.* at 35].

On February 14, 2024, the third search warrant was issued for two cellphones previously seized from Mr. Deas. [Doc. 549-2 at 23]. According to the Affidavit submitted by Special Agent Hernandez, these devices – (734) 217-6607 (hereafter #6607) and a TCL Smartphone – were also used by Mr. Deas to communicate with his co-conspirators during the commission of the charged offenses. [*Id*. at 10-15]. The Affiant stated that Mr. Deas had been arrested in Alabama during a traffic stop on January 24, 2024. [*Id.* at 12]. Following his detention, he "complied with lawful commands and while [he] was exiting the driver's seat, agents viewed [him] place a cellular device on the driver's seat, later determined to be SUBJECT TELEPHONE 1. DEAS was then placed into custody without incident." [*Id*. at 13].

Additionally, Special Agent Hernandez stated that his agents had intercepted calls between the co-conspirators on February 23, 2023, that revealed "a call between DUNN and DEAS who confirmed the details of the transaction. Specifically, during the call, DUNN asked DEAS to confirm if DUNN's friend left with "9 O-Clock," which agents believe to be coded language to reference 9 kilograms of cocaine" [ Doc. 549-2 at 10]. Based on an analysis of the conspirators' intercepted conversations, the Affiant concluded that Mr. Deas directed a co-conspirator to obtain cocaine in the Miami area for distribution in the Northern District of Georgia. [*Id*. at 11-12]. The Magistrate Judge found this evidence established probable cause to support issuance

of the warrant. [Doc. 549-2 at 23].   The communications seized from Mr. Deas's devices (and those of his co-conspirators) were used to secure the pending Superseding Indictment.

## **The Parties' contentions**

Mr. Deas alleges that  evidence seized from his cellphones (#2582 and #6607) and his iCloud account must be suppressed because the Affidavits submitted in support of the requested warrants lack probable cause.[2] [Doc. 549 at 2; Doc. 550 at 1-2]. He also avers that the seizure of the communications was unlawful because the warrants were overly broad resulting in "the type of general rummaging that the Fourth Amendment is aimed to prevent." [Doc. 549 at 2-3; Doc. 550 at 2].   He makes a similar claim regarding the warrant authorizing a search of his iCloud account, asserting that the Affidavit "permitted the wholesale copying of all files and records in the account."

---

[2]   The Government has stated it will not introduce any evidence seized from the TCL smartphone in its case in chief. [Doc. 609 at 10]. It also states that any argument related to the #2753 cellphone is moot because that device was neither seized nor searched. [*Id.* at 7-8]. Accordingly, only the communications related to cellphones #2582 and #6607, along with the iCloud account, are relevant to Mr. Deas's pending motions.  The challenges to the remaining devices are moot.

As for Mr. Deas's assertions that the wiretap Orders issued for Mr. Dunn's cellphones (TT#3 and TT#4) were unlawfully issued, those arguments will not be addressed at this time.  Mr. Deas has adopted Mr. Dunn's motions to suppress related to those intercepted communications. [Docs. 548, 591].  Because the parties have not fully briefed those motions, Mr. Deas's claims related to his co-conspirator's constitutional challenges are not ripe for judicial review.

[Doc. 549 at 2]. "Because the warrant made no attempt to limit the information that could be copied and reviewed," he submits, it is unconstitutionally overbroad. [*Id.* at 3].

The Government urges this Court to reject these claims, arguing that Mr. Deas lacks standing to raise these challenges because he has not "put forth *any* evidence to show he was a party to any intercepting communication on the wiretaps" or established that he had a reasonable expectation of privacy in the devices or the iCloud account. [Doc. 609 at 13-15] (emphasis in original). [3] "Given the dearth of any proffered evidence (or argument) as to standing," it continues, Mr. Deas lacks standing to contest the constitutionality of the warrants. [*Id.* at 16].

The Government also argues that Mr. Deas's claims that the Affidavits lack probable cause are meritless because Special Agent Hernandez provided "extensive detail about a large and sophisticated drug trafficking operation and, contrary to Defendant's claims, provided specific quotes and not mere summaries of the conspirators' electronic and wire communications regarding their illegal activity." [Doc. 609 at 18]. Moreover, even if this Court finds that the Affidavits lack probable cause, the Government asserts that the evidence would not be subject to suppression

---

[3] The Government identifies one of the cellphones with the number "2585" rather than "2582." [Doc. 609 at 9]. This appears to be a typographical error.

because the *Leon* good-faith exception to the exclusionary rule is applicable in this context. *United States v. Leon*, 468 U.S. 897, 922 (1984); [Doc. 609 at 23-25].

Lastly, it argues that the warrants were not overbroad because each one specifically delineated the evidence sought by the Affiant, revealed how that evidence was related to the overall investigation and identified the date ranges which precisely defined the scope of the proposed searches. [Doc. 609 at 22]. Because of this specificity, the Government requests that relief be denied.

## Discussion

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. However, " 'Fourth Amendment rights are personal rights which ... may not be vicariously asserted.' " *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citations omitted) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). "Fourth Amendment jurisprudence requires that one challenging as unreasonable a search or seizure must have 'standing,' i.e., a legitimate expectation of privacy in the [item] searched." *United States v. McCray*, Cr. No. 1:15-cr-212-WSD/AJB, 2017 WL 9472888, at *6 (N.D. Ga. June 15, 2017) (citing *United States v. Gonzalez*, 940 F.2d 1413, 1420 n.8 (11th Cir. 1991)). Therefore, in order to bring a claim that the Government conducted an

unconstitutional search under the Fourth Amendment, Mr. Deas must show that " '(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable.' " *United States v. Bushay*, 859 F. Supp. 2d 1335, 1361 (N.D. Ga. 2012) (quoting *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam)); See also *California v. Ciraolo*, 476 U.S. 207, 211 (1986) (citation omitted) (standing to challenge a search under the Fourth Amendment requires a subjective expectation of privacy that society recognizes as legitimate); *United States v. Baron-Mantilla*, 743 F.2d 868, 870 (11th Cir. 1984) (per curiam) (citation omitted). Thus, "a defendant must establish both a subjective and an objective expectation of privacy," and he "bears the burden of showing a legitimate expectation of privacy in the area searched." *United States v. Suarez-Blanca*, Cr. No. 1:07–CR–0023–MHS/AJB, 2008 WL 4200156, at *6 (N.D. Ga. Apr. 21, 2008) (citations omitted).

Moreover, a defendant cannot rely on general, conclusory, or vague assertions to establish standing to contest a search. *United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) (citation omitted); See also *United States v. Caymen*, 404 F.3d 1196, 1200 (9th Cir. 2005) (finding defendant failed to carry his burden of proof to establish an "acceptable" expectation of privacy in a laptop where he "did not submit an affidavit or other evidence supporting his claim that he had honestly purchased and

owned the laptop" and while he "did make such a claim to the police during their search of his room, that claim was, of course, unsworn") and *United States v. Thompson*, 171 F. App'x 823, 828 (11ᵗʰ Cir. 2006) (per curiam) (unpublished) (finding that the defendant did not establish standing; noting that he only relied on the government's contention that he was renting the room despite the fact that he "repeatedly and adamantly disclaimed any interest in the motel room on the night of the search.").

In the instant case, the Government argues that Mr. Deas has failed to establish that he has standing to contest the warrants because he has not alleged a reasonable expectation of privacy in any of the devices, merely "obliquely refer[ring] to 'his cell phones' and 'his iCloud account.'"[Doc. 609 at 14]. However, Mr. Deas admits in his pleadings that all of the devices belong to him. [Doc. 549 at 1; Doc. 550 at 1]. In addition, the Affidavits establish that he was found in possession of the devices and that the iCloud account is associated with a cellphone number assigned to him. [Doc. 549-1 at 11; Doc. 549-2 at 12, 13; Doc. 550-1 at 24]. Therefore, the undersigned will assume – *without deciding* – that he has standing to raise these constitutional challenges. However, even assuming he maintains this status, both motions should be **DENIED** because his claimed errors are meritless.

### Legal Authority and Analysis

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"The Fourth Amendment requires that a search warrant be issued only when there is probable cause to believe that an offense has been committed and that evidence exists at the place for which the warrant is requested." *United States v. Betancourt*, 734 F.2d 750 , 754 (11th Cir. 1984). Search warrants are presumed to be validly issued. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). The defendant bears the burden of establishing that a warrant was defective or executed improperly. *Id.*; *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir. 1986); *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980). [4] Whether a search warrant affidavit establishes probable cause is a question of law. *United States v. Miller*, 24 F.3d 1357, 1360 (11th Cir. 1994). Probable cause to support the issuance of a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair

---

[4]    In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions rendered by the Fifth Circuit before October 1, 1981.

probability of finding contraband or evidence at a particular location.  <u>See</u>, *United States v. Noriega*, 676 F.3d 1252, 1261 (11th Cir. 2012); *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009); *United States v. Gonzalez*, 940 F.2d 1413, 1419 (11th Cir. 1991).

Further, "[p]robable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts[.]" *Illinois v. Gates*, 462 U.S. 213, 232 (1983).  It deals "with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Gates*, 462 U.S. at 241 (<u>quoting</u> *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).  Moreover, "[p]robable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" *United States v. Angulo-Hurtado*, 165 F. Supp. 2d 1363,  1376 (N.D. Ga. 2001) (<u>quoting</u> *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996)).  Yet, an affidavit will be found deficient if it contains merely conclusory allegations and fails to provide sufficient information in order for the judge to conclude "that evidence or contraband will probably be found at the premises to be searched." *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002) (internal quotation marks omitted); *Gates*, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere

ratification of the bare conclusions of others. In order to ensure that such an abdication of the magistrate's duty does not occur, courts must continue to conscientiously review the sufficiency of affidavits on which warrants are issued.").

In deciding whether to issue a search warrant, the issuing judge may rely upon the opinions and conclusions of an experienced law enforcement agent-affiant, *United States v. Robinson*, 62 F.3d 1325, 1331 n. 9 (11th Cir. 1995), since "[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Gonzalez*, 969 F.2d 999, 1004 (11th Cir. 1992) (quoting *United States v. Fouche*, 776 F.2d 1398, 1403-04 (9th Cir. 1985)); See also, *United States v. Kirk*, 781 F.2d 1498, 1505 (11th Cir. 1986) ("Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number.") (citations omitted).

To justify a search, the circumstances must indicate why evidence of the alleged illegal activity will likely be found in a particular place. *Gates*, 462 U.S. at 238; *United States v. Griffin*, 555 F.2d 1323, 1325 (5th Cir. 1977). Therefore, an affidavit "must establish a nexus between the place to be searched and things to be seized, such that there is a substantial basis to believe that the things to be seized will be found in the place searched." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010). "[T]he nexus between the objects to be seized and the premises searched can be established

from the particular circumstances involved and need not rest on direct observation." *United States v. Lockett*, 674 F.2d 843, 846 (11th Cir. 1982). Finally, "probable cause must exist when the magistrate judge issues the search warrant," *United States v. Santa*, 236 F.3d 662, 672 (11th Cir. 2000) (quoting *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994)), because a search cannot be made legal by the evidence that is discovered. *United States v. Di Re*, 332 U.S. 581, 595 (1948). With these principles in mind, the undersigned turns to Mr. Deas's claimed errors.

### The warrants were supported by probable cause

Mr. Deas submits that the warrant applications lack probable cause because they were based "largely on agent summaries of wiretapped calls that were recorded over two specific and identified phone lines (TT3 and TT4) and conclusory statements by the agent." [Doc. 549 at 2; Doc. 550 at 1]. The Government argues that these assertions are baseless, contending that all three Affidavits "detailed a wiretap investigation into a large-scale drug distribution operation focused around Charles Dunn. The affidavits explained that intercepts and other evidence showed how Defendant was conspiring to import cocaine and distribute it with Dunn." [Doc. 609 at 16]. Furthermore, it avers that Mr. Deas's claim that the applications are only comprised of conclusory statements is belied by the extensive detail found in the Affidavits; details that include specific quotes of the co-conspirators' electronic and

wire communications, Mr. Deas's use of his devices to communicate with Mr. Dunn before and after the distribution of controlled substances, and Mr. Deas's conversations indicating his personal involvement in international drug transactions. [Doc. 609 at 18-19]. "Given the nature and scope of this criminal conduct," it continues, the totality of these facts established sufficient probable cause in accordance with the Fourth Amendment. [*Id*. at 19].

This Court agrees. As noted by the Government, Mr. Deas repeatedly proclaims that the Affidavits lack probable cause without specifying how they are factually insufficient or identifying the legal authority that supports his claims.  In contrast to his bald assertions, the Affidavits provide an abundance of information describing the Affiant's experience in conducting an array of state and federal criminal investigations since 2018, explaining that these experiences provided insight into suspected drug traffickers' practices of  using "cell phones, computers, and other electronic media devices to communicate with co-conspirators (including, but not limited to, suppliers, couriers, stash house workers, and customers) [to] coordinate the purchases/sale/distribution of narcotics." [549-1 at 14; 549-2 at 3-4; 550-1 at 9-13].

Furthermore, the Affiant presented a meticulous narrative of Mr. Deas's involvement in the conspiracy based on the data obtained from the toll records, the agents' observations of Mr. Deas's interstate travel in connection with the distribution

16

of cocaine, and his apparent coordination of future narcotics transactions with Mr. Dunn during a 2023 conversation. [Doc. 549-1 at 20-22]. Special Agent Hernandez also presented a comprehensive account of how the co-conspirators' activities were related to Mr. Deas's iCloud account, explaining that cellphone #2582 was used to "communicate with multiple telephones with the Bahamas area code, including one number believed to be used by GARDINER on 114 occasions ((242) 455-6984). Based on the prior intercepts and the times of DEAS's trip to the Bahamas before his cocaine transaction with SMALL, agents believe that at least some of the individuals with Bahamas-based phone numbers are involved in drug trafficking." [Doc. 550-1 at 24]. The Affiant subsequently confirmed that the #2582 phone was associated with Mr. Deas's iCloud account. [*Id.*].

These extensive details, presented in all three Affidavits, constitute ample probable cause justifying issuance of the warrants. Indeed, the Government need only establish that the Affidavits establish that Mr. Deas *probably* engaged in the suspected criminal activity to meet Fourth Amendment demands. See, *United States v. Hodges*, 705 F.2d 106, 108 (11th Cir. 1983), quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969). ("Probable cause simply means that a 'probability, and not a *prima facie* showing, of criminal activity' be established.") and *United States v. Harden*, No. 322-011-BKE, 2030 WL 3933373 at *4 (S.D. Ga. May 1, 2023) (finding that the affidavit based on

information obtained from confidential sources and from officers' observation of drug deals conducted by the suspects established probable cause that they were engaged in a drug trafficking conspiracy). See also, *Riley v. California*, 573 U.S. 373, 401 (2014) (recognizing that "[c]ell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and provide valuable incriminating information about dangerous criminals"). Accordingly, the undersigned finds that all three Affidavits supplied sufficient probable cause justifying the issuance of the warrants. Based on these findings, an analysis of the applicability of the *Leon* good-faith exception is unwarranted.

**The warrants were not unconstitutionally overbroad**

Mr. Deas also submits that the search warrants are unconstitutionally overbroad. Specifically, he alleges that the Affidavits unlawfully "permitted the wholesale copying of all files and records in the account," thereby allowing the agents to examine all of his data before determining what information they intended to seize. [Doc. 549 at 1-2]. He makes the same claim concerning his iCloud account, arguing that the warrant "made no attempt to limit the information that could be copied and reviewed." [Doc. 550 at 2].

The Government contends that these claims are also meritless, asserting that each of the warrants including an "Attachment B" that consisted of "detailed and

particularized lists of the items to be seized." [Doc. 609 at 21]. And in response to Mr. Deas's allegation that the agents were permitted to conduct rudderless searches of his devices, the Government notes that every warrant included "(1) specific types of information that could be seized from the phones and the iCloud account; (2) that any seized evidence needed to relate to the investigated offenses; and (3) that the seized evidence needed to fall within specified date ranges tied to the investigation." [*Id.* at 22].

The Government's response is persuasive. As before, Mr. Deas has failed to articulate the warrants' defects that allegedly run afoul of the Fourth Amendment. Each of the Magistrate Judges were provided Affidavits and Attachments that outlined the scope of the anticipated searches, the specific acts of the co-conspirators that were related to the utilization of the devices, and delimited timelines within which the communications would likely be discovered. [Doc. 549-1 at 17-28, 33-34; Doc.549-2 at 7-15, 20-21; Doc. 550-1 at 14-24, 37-39]. Given the expansive nature of this conspiracy, the utilization of a multitude of electronic devices and the conspirators' varied attempts to avoid detection, the descriptions presented were "as specific as the circumstances and of activity under investigation permit[ted]." *United States v. Wuagneux,* 683 F.2d. 1343, 1349 (11th Cir.1982). Thus, this Court finds that the specificity presented in all three Affidavits establishes that the warrants were not

overbroad. See, *United States v. Weinstein,* 762 F.2d 1522, 1531–32 & n. 4 (11th Cir.1985) (concluding that the attachment offered with the requested warrant particularly described property to be seized, noting that "the nature of the case under investigation" must be considered and the affidavit specifically set forth the scope of the scheme); and *In re Search Warrant Dated July 4, 1977,* 572 F.2d 321, 326–27 (D.C.Cir.1977) (reversing the district court's determination that the warrant was impermissibly overbroad, finding that the district court ignored the language of the warrant limiting its scope to evidence of the particular crimes described in the affidavit). See also, *United States v. DSD Shipping, A.S.*, 2015 WL 5164306, at *9 (S.D. Ala. Sept. 2, 2015) (where the court found that "the exhaustive list contained in Attachment B paragraph 1 is as particular as feasible under these circumstances. Further, the long-held rule in this Circuit is "the particularity requirement must be applied with a practical margin of flexibility, depending on the type [ ] property to be seized, and that description of property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit.")(citation omitted).

## <u>CONCLUSION</u>

For all of the reasons stated above, this Court **RECOMMENDS** that Mr. Deas's Motion to Suppress Evidence Seized from Electronic Devices [Doc. 549] and Motion to Suppress Information Associated with iCloud account [Doc. 550]  be **DENIED**.

**IT IS SO RECOMMENDED** this 20th day of May, 2025.

REGINA D. CANNON
United States Magistrate Judge